FLEMING, Judge.
There were two points made in this cause, one by the plaintiff’s counsel on the propriety of admitting the evidence in order to extinguish the interest during the absence of the plaintiff from this country ; and the other by the defendant’s counsel on the point, whether the plaintiff by failing to continue the process against the non-resident parties, had not discontinued his suit altogether ?
On the first question, it was said by the plaintiff’s counsel, that such evidence could not be given on the plea of payment: which position is correct, if the case be considered at common law merely. But, the act of Assembly has altered the common law; and, by allowing the penalty “ to be discharged by payment of the principal and interest due thereon,” [c. 13, § 5, 4 Stat. Larg. 359; c. 7, § 6, 5 Stat. Larg. 511; c. 128, § 83, R. C. ed. 1819,] necessarily turns the quantum into a question to be determined by circumstances; and, I think it was the province of the jury to decide that question. The plaintiff by absenting himself from the country, put it out of the debtor’s power to make payment; and, therefore, it is unreasonable that he should demand interest during that, period. This was a circumstance proper to be left to the jury upon a plea of this kind, in an action of debt upon a bond. It is like collateral evidence to mitigate damages in actions of assault and battery.
As to the other point. The act of Assembly does not give such extensive jurisdiction, as the plaintiff’s counsel contended for; the clause relative to the copy of the bond proves it: which would have been unnecessary, if the Court had possessed general jurisdiction, so as to force the appearance of non-resident defendants from other districts. According to any construction, though, I think it ought to have been pleaded; and, therefore, I am of opinion that *121 the judgment of the Court was right upon both grounds, and should be affirmed.
CARRINGTON, Judge.
Every question in this case might have been saved, except that upon the bill of exceptions. If Mr. Wickham’s argument were correct, a judgment might never be obtained where there are several defendants; because, it would seldom happen that they all could be found in one district. For, the act of Assembly does not admit of the enlarged jurisdiction which he contends it does. Although, the words of the proviso p. 83 [R. C. ed. 1794,12 St at. Larg. 739,] are calculated to give that impression at the first view, yet a close attention will lead to another construction. For, the next member of the sentence which allows a copy to be given in evidence, would, according to the other exposition, have been unnecessary. But, let the interpretation of the act be what it may, the matter should have been pleaded in abatement, without which, if it even be admitted that his argument is correct, the defendant’s counsel cannot avail himself of it. Upon that ground, therefore, I think there is no error.
The whole question then rests upon the other point; and, I think the jury had a right to decide what was the amount of the interest due. The act of Assembly seems to me essentially to invest them with this power. For, by the express directions of the act, the penalty is “ to be discharged by payment of the principal and the interest due thereon,” with the costs of suit! Who then are to say, what “interest is due thereon?” The jury surely; who must decide upon the circumstances of the case, and say when it shall commence, how long it should continue, and when it should be suspended or extinguished. On all general issues, (and this is one) the whole circumstances of the casé should be submitted to the jury, who are to decide accordingly.
As to the justice of the case, I do not think that its being a British debt or not, makes any difference; the same rule would apply in a case between two citizens. Now, suppose a case between two citizens, in which one is creditor, and the other debtor; and, that the creditor removes himself into parts unknown, so that the debtor could not come at him in order to make payment, would it be just that full interest should be given? And might not the jury to enquire into the circumstances, and reduce the interest accordingly ? Again; suppose there be a bargain and sale of property, and that the seller keeps the property a *122 long time, would it be right that he should recover interest upon the purchase money during the time of his unjust detention of the property ? Surely not; no jury but what would deduct it; and, I think the law would warrant them in doing so. In this case, the plaintiff absented himself, went into a country with which we had no intercourse, and did not return till 1783; so, that his debtor could not make payment to himself, or by remittance. If, under these circumstances, he were to have full interest, he would be better off than our own citizens, who staid at home and sustained the injuries of the war. Upon the whole matter, the trial appears to have been fair; the plaintiff had notice of the evidence; the verdict I think was just,, and does not in my opinion endanger the honor of the country. Therefore, I am for affirming the judgment.
PENDLETON, President.
It is said by the appellee’s counsel, that this being a joint bond, one obligor could not be proceeded against alone; that the abatement against the others on the return of the Sheriff of King WiUiam, that they were no inhabitants, was an error, and the plaintiff ought to have proceeded against them according to the directions of the District Court law. What that should be, was a matter of doubt at the hearing, either from a partial reading of the clause, or inattention in me. I thought a testatum capias might issue from King-, and Queen, to any County in the State, returnable and to be proceeded on there; and that the plaintiff should have so proceeded. I find, though, I was mistaken, and Mr. Warden right, that a distinct suit was to be commenced in the district where the others were to be found; in which, a copy of the bond was to be evidence, or the Court might order the Clerk of King and Queen to attend with the original.
But, this proceeding seems intended for the benefit of the plaintiff, who might waive it and proceed against the defendant only who had been arrested, if he was satisfied of his ability. Mr. Wickham, in answer to the objection, that he ought to have pleaded this in abatement, endeavored to obviate it by observing, that he was prevented from pleading it, because the declaration stood against all. But, the abatement was before the plea, and had the same effect as to him, as if their names had been stricken out of the declaration; he had a right to waive it; and might chuse to do so, to save expense and delay, and relying on a total indemnity from the principal,.if solvent; or if he was in *123 solvent, a contribution from the co-securities. I concur in opinion, that, by pleading in bar, he legally waived the objection.
As to the question, on the merits, relative to interest:
We are told, that the juries through the State are branded with infamy by all impartial observers, as having, in their verdicts striking off interest during the war, violated the principles of justice, of law, of treaty, of the Federal Constitution, and, finally, of religion. A heavy charge, indeed, against a State; for, such it must be, since the jurors, dispersedly collected at the various Courts, uniformly pursue the opinion, which evidently proves the general sentiment.
Who these impartial observers are, I know not, but will avow myself to be impartial, (unless I may be supposed to possess a national bias, and from that, it is equally probable that the gentleman* or his observers are not free,) and will endeavor, as far as my opinion will go, to redeem my country from this grievous charge) with equal sincerity, though with less acrimony, than the gentleman made it.
1. Upon thz justice of the case. A claim of the principal debt is founded on the modern practice of war in Europe, securing individual property from confiscations in consequence of national wars. I, who am an utter enemy to all war, if it can be avoided, cannot but approve of this, and every other practice tending to soften its rigors. Our Legislature, in the preamble to their sequestration act, [Oct. 1777, c. 9, 9 Stat. Larg. 377,] acknowledge the principle, and manifest a wish to adopt it, but waited to discover whether our enemy would observe those rules in a war, different from one between independent nations. Did Britain meet us upon that liberal ground ? The recollection is painful. I wish it could be forgotten, and it is with an ill grace citizens of that country make it necessary to review it. Their treatment of our unhappy soldiers who became their captives; their wanton destruction of our towns, hou-' ses, and other private property; their plunder of plate and specie; but, above all, as most materially affecting this State, their tempting our slaves, by a delusive promise of manumission, to take arms against us; slaves, which they had introduced and received our money for, and in which property, alone, our citizens probably lost more value than the amount of all the debts they owed the British mer *124 chants: These, I say, were so many infractions, on their part, of the modern practice of war, which would, in reason and justice, deprive them of the beneficial parts of that practice, as against American debtors, and throw the creditors upon their own government for satisfaction; which, by its conduct, deprived them of their ordinary recourse against their debtors. So, that I am free to declare my opinion, that, independent of the treaty, they were not entitled, in justice, to recover one shilling of their principal debts from the debtors.
I would not be understood, by whát I have said, to find fault with the treaty of. 1783, in this respect; much less to hint, that it ought not to have been performed. As a citizen, I have ever thought and expressed myself otherwise; because, a treaty disadvantageous in one article and bene- ■ ficial in all others, was as much as we could expect, and, at any rate, preferable to a continuance of the war. When I say it ought to have been performed, let me be understood to mean upon condition, that Britain had complied with the treaty on her part, having no idea that in compacts, national or private, containing mutual covenants, a party who has broken his covenants, can complain in a Uourt of Justice, of a breach on the part of the other.
However, this is now out of the question; and I have no difficulty in deciding as a Judge, that we must regard that treaty as a law, controuling our confiscation acts, and that the debts are to be paid : the only question, therefore, is, whether interest during the war, constitutes a bona fide part of the debt ? And I do not hesitate to declare my opinion in the negative, whatever stigma may be attached to that opinion.
Our situation at that period, attacked by a powerful nation, to whose government we had been subjected ; called to the exertion of every power, personal and pecuniary, in defence of life, liberty and property; and without commerce, (which had been theretofore monopolised by that nation,) to enable our citizens to pay their debts, takes the case out of every principle on which interest is demandable.
The objection applies to all creditors, but a fortiori against those of the nation, who unjustly brought us into ■that situation.
I should suppose, that under the modern practice of war, all the creditors of the enemy nation could expect, would be, to be placed on the same ground with the citizen creditors ; subject to all inconveniences, which imperious ne *125 cessity imposed on the latter, in consequence of the' war. Strike out the interest in question, they are placed in a preferable state: they received their principal, and all preceding and subsequent interest in speciej the others received theirs in depreciated paper.
But, suppose the plaintiff, a citizen, going beyond sea with his bond, and leaving no agent to receive the money, since the debtor could not by paying the debt, if the war had permitted his attention to it, have saved the interest, that alone ought to exempt him from it.
On the merits, therefore, I am of opinion, that, no interest is due, and that none of the moral obligations stated, are violated by the opinion. * Whether religion has been transgressed, will rest with another and more unerring tribunal!
2. Having shewn on what ground my opinion is formed, that justice is attained in the decision appealed from, it only remains to consider the objections to the mode of proceeding upon the bill of exceptions.
It is to the opinion of the Court, permitting the defendant to give evidence, “that the plaintiff was absent beyond sea, from April 19th, 1775, to the 19th April, 1783, and had no known attorney here to whom the money could have been paid, with a view to extinguish the interest during that period,” on previous notice, that such evidence would be offered, that the objection is taken; and it is said, the admission of such evidence is improper on the plea of payment; for, that even payment of principal and interest after the bond was forfeited, if pleaded, might be demurred to.
If the counsel meant, that this was the case at the common law, he was correct; but it does not apply at present. At common law, if the money was not all paid at the day, although only a shilling remained due, the bond was .forfeited and the penalty was thenceforth considered.as the debt. This rigid law drove the debtor into a Court of Equity, whose maxims permitted it to relieve against penalties and forfeitures in all cases where just compensation could be made, of which in this instance principal and interest was adopted as a just measure; what had been paid was allowed, and, on payment of the balance, an injunction stood to the judgment for the penalty.
*126 This circuitous proceeding was a public evil, and the Legislature wisely provided a remedy, by the act to prevent frivolous and vexatious suits, long since introduced, [May, 1732, c. 13, § 5, 4 St at. Larg. 359,] and continued in our Code, transferring to the juries the equitable jurisdiction. Upon the trial, not only payments but discounts are to be allowed, and the jury are to say what is due of principal and interest, on payment of which, the judgment for the penalty is to be discharged. Now, if instead of payment of interest, proof is made to their satisfaction, that in right and justice, the interest ought not to be paid, what shall restrain the jury from finding that interest not to be due, or the Court from permitting the evidence to that effect to be given ? I know of nothing, in law or reason, to interdict either. If, we recur to the principles of equity on the occasion, from whence the jurisdiction is drawn by Courts of law, persuaded I am, that no Chancellor, in. relieving against penalties, would impose upon a debtor the payment of interest, which, on proofs before him appeared not to be due in conscience.* The notice in this case was fair, though from the history of the business in general, .it does not seem to have been required, but it has been discussed as a thing of course.
We are told, that the Federal Chief Justice, in an elaborate charge to the jury, in Jones v. Hylton, declared his opinion in favor of interest. I have no doubt, but he gave that opinion with the like sincerity, as I have delivered mine to the contrary; and mankind, if they think it worth while, will judge between us.
So far as it concerns the present case, it seems, after telling the jury the interest was a question of law, in which I have also the misfortune to differ from him, thinking it proper for the jury to decide, what interest as well as principal is due, he finally said, the jury might decide both law and fact if they chose it. This power it seems the juries exercised; and their verdicts being uniform against the interest in the Federal as well as other Courts; the creditors *127 and their counsel have acquiesced, and struck off the interest as a thing of course.
This happy train of the business shall not he interrupted by my opinion. For, I cordially agree with my brethren in affirming the judgment.
Judgment affirmed.

[* Mr. Warden was a Scotchman.]

[ * On the question of interest, see the elaborate answer of Mr. Jefferson, to Mr. Hammond, May 29,1792, Am. State Papers, voL 1, p. 257, 304-312; and J. Washington’s opinion in Conn et al. v. Penn et al., 1 Peters’ R. 523-525.]

[*In Waller v. Long, 6 Munf. 77, Roane J delivering the opinion of the Court, said,46 The Court understands it to be a clear principle, that, the clause which prescribes the sum for which judgment is to be rendered on a bond, meant that, in cases of penalties by way of security, the final justice of the case should be attained m the Courts of law, for which, before, parties had been driven into the Courts of Equity If any authority is wantingto support this clear position, it may be found in the case of Bonafous v. Rybot, 3 Burr 1373, in relation to the English Stat. of 4 and 5 Anne, c. 16, which is substantially similar to our act.”
And see post. Barret & Co. v. Tazewell, p. 220.]