Burks, J.,
delivered the opinion of the court.
The amounts in controversy in these cases are small. Besides the costs, in the first case, only $182, and in the second $119.41, not sufficient of themselves to give this court jurisdiction to review the judgments of the court below. Our jurisdiction is invoked, however, upon the ground set out by the plaintiffs in error in their petitions, that the act of the general assembly, under which the judgments were rendered, is unconstitutional and void; and we have given to the question, thus presented for our determination, that consideration which its importance demands.
Throughout our deliberations, terminating in the conclusion to which we have come, we have been guided by the wise and salutary rule enunciated by Chief Justice Marshall as long ago as 1810, in the leading case of Fletcher v. Peck, 6 Cranch’s R. 87, *209 generally followed by the courts of last resort in the several states in like eases, and by none more uniformly and implicitly than by this court. Griffin’s ex’or v. Cunningham, 20 Gratt. 31; Homestead Cases, 22 Gratt. 266.
The question, says the chief justice, whether a law be void for its repugnancy to the constitution, is at all times a question of much delicacy, which ought seldom if ever to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such, that the judge feels a clear and strong conviction of their incompatibility with each other.
The act, the validity of which is drawn in question in these cases, was approved April 2, 1873, and is entitled “ An act to amend and reenact section 14, of chapter 187, of the Code of 1860, in relation to interest.” The section, as thus amended and reenacted, constitutes the 14th section of chapter 173 of the Code of 1873, p. 1120.
The amendment, in substance, empowers the courts and juries in all suits for the recovery of money founded on contracts,' express or implied, or on causes of action, or on liabilities which were entered into or existed, or where the original consideration accrued prior to the 10th day of April 1865, to remit the interest upon the original debts found to be due, or any part thereof, for the period between the 17th day of *210 April 1861, and the 10th day of April 1865, or for any portion of said period. It further empowers the court, in which any judgment or decree has been rendered prior to the passage of the act, on motion of the defendant, upon ten days’ notice to the plaintiff, to review such judgment or decree, and abate the same to the extent of the interest for the period aforesaid.
In the first of the cases now under review here, the plaintiff brought an action of debt in the court below upon a bond, which was in these words:
"$762.
Nine months after date, for value rec’d, we, the undersigned, promise to pay to C. M. Roberts, or order, seven hundred and sixty-two dollars, with int. from date.
Witness our hands and seals this 12th day of Decem’r, 1860.
William Cocke, [Seal.]
(Security) Rich’d H. Carter, [Seal.]”
The defendants appeared and filed three pleas: 1st. payment; 2d, a plea averring that the bond sued on was entered into prior to the 10th day of April 1865, and praying judgment that the interest on the bond from the 17th day of April 1861, till the 10th of April 1865, be remitted in accordance with the act aforesaid; and 8d, a plea of the like tenor and with the like prayer as the 2d, with the further averment that “ the confusion of the business relations of the country incident upon the secession of the State of Virginia from the United States, and the war consequent thereupon between the Confederate States and the United States was so great and disorganizing that the principal money in said writing obligatory specified was not worth any interest between the periods afore *211 said to the defendants, who were citizens of the county •of Fauquier, which was occupied from time-to time by the Federal troops.”
The plaintiff' took issue on the plea of payment and demurred severally to the other two pleas.
The demurrers were overruled, and, neither party demanding a jury, the whole matter of law and fact was submitted to the court; and the bond sued on being given in evidence, and that being all the evidence, the court gave judgment for the plaintiff for the principal sum specified in the bond, with interest from the time it became payable until the 17th day of April 1861, and from the 10th day of April 1865 until payment, and for costs, expressly remitting the interest between the dates aforesaid.-
In the second case the plaintiff, Frances A. Murphy, in the year 1869, brought an action of covenant in the circuit court of Fauquier county, upon an instrument under seal and of the tenor following:
“Received, Nov’r 26th, 1860, of Frances A. Murphy, five hundred dollars, tó bear interest from date. I also agree to and put a negro boy, Abraham, in pond (meaning in pawn) to secure the payment of the same. Whenever the five hundred dollars is paid to Mrs. Murphy, with legal interest, the said boy no longer belongs to the said Mrs. Murphy, but the title returns back to me.
Given under my hand and seal this the 26th day of .November, 1860.
John Gaskins, [Seal.]”
The defendant pleaded to this action “covenants performed” and “ covenants not broken;” upon which pleas issues were made up, and neither party demand *212 ing a jury, the issues were tried by the court on the-4th day of April 1872, and judgment was rendered for the plaintiff for the $500 in the covenant specified,, with interest from the date thereof, and for costs.
On the 12th day of April, 1873, the personal representative of John Gaskins (the defendant in error here), pursuant to notice, made a motion in the circuit court of Fauquier county for" a review of the judgment aforesaid, and an abatement of the interest included therein between the 19th day of. April, 1861, and the-10th day of April, 1865; and the court rendered judgment accordingly, abating said interest. Upon the hearing of the motion the only evidence adduced was-the record of the first judgment, including the covenant on which it was rendered.
We will examine the case of Roberts’ adm’r v. Cocke &c., first, and when we have disposed of that, we shall have but little to say of the other case.
If during the late war between the United States, and the Confederate States, the defendants Cocke and Carter had resided within the territory under the dominion of one of the belligerent powers, and their creditor had resided in the territory of the other of said powers, they would have been entitled, independently of the statute in question, to an abatement of the interest during the time the war lasted. Such is the rule of the public law applicable to a war between independent nations, and at an early period after the termination of the late war between the states, it was applied by the courts to that war. It was so applied in 1866 by the district court of appeals of Virginia for the first judicial district. See the opinion of the court delivered by Judge Joynes in Tucker v. Watson, McGill & Co., 6 Amer. Law Register, (N. S.) 220; citing among other authorities McCall v. Turner, 1 Call 133, *213 •and Brewer v. Hastie & Co., 3 Call 22; and this court recognized the same rule in the case of McVeigh v. The Bank of the Old Dominion, 26 Gratt. 188.
The supreme court of the United States, although •at first hesitating as to this application of the rule, (Ward v. Smith, 7 Wall. U. S. R. 447,) finally sanctioned it by their decision in Brown v. Hiatts, 15 Wall. U. S. R. 177.
If, therefore, Cocke and Carter (the defendants in error) had been alien enemies in respect of their creditor, they would have been entitled to an abatement of the interest on their debt for the period covered by the war, and might have made their defence, certainly under a special plea, and perhaps under the plea of payment, as was allowed to be done in McCall v. Turner, supra.
But as no such defence was made, it is to be presumed, if indeed it may not be inferred from the record, that the facts did not warrant the defence.
The averment, which seems to be the gist of the third plea, that the principal money “was not worth any interest to the defendants ” during the war, was no bar to the plaintiffs’ right to recover. The defendants by their bond had expressly stipulated for continuing interest on the debt without any exception of the period during time of war, should one occur, and the law as the general rule, makes no such exception where the contracting parties make none. It may be true, that the defendants derived no benefit from the use of the principal money during the war. This may have been their fault or their misfortune; but whether the one or the other, the contract was not affected by it. They were at liberty under the contract to discharge the obligation at any time by payment, according to its terms, of the principal sum and accrued *214 interest. They neither paid nor offered to pay any part of either, and while they withheld another’s money it does not lie in their mouths to say, that they derived no benefit from it, and therefore should not be recluired t° pay for the use of it that compensation which they had agreed to pay.
_ . -i-ii,.-,, It remains to consider whether the third plea stripped of the faulty matter which has been passed upon, and the second plea entitled, the defendants to the abatement of the interest which they claimed, and which by the judgment of the court was allowed and ordered. The solution of this question depends upon the answer to be given to the main question in these eases: Is the act of the legislature, by force of which only the judgment was rendered, valid as law? Is the act repugnant to the constitution of the state, or to the constitution of the United States?
Section 1, article 5, of the constitution of this state,, is in these words: “The legislative power of this-commonwealth shall be vested in a general assembly, which shall consist of a senate and house of delegates.” Whatever power therefore is comprehended in the terms, “the legislative power of this commonwealth” is vested in the general assembly by the section aforesaid, subject only to such limitation^ as are imposed by other parts of- the state constitution and by the constitution of the United States. Amongst the limitations contained in the latter, section 10, article 1, declares that “ no state shall pass any law impairing the obligation of contracts;” and the same inhibition is put upon the general assembly by the constitution of the state, article 5, section 14.
Speaking of this clause, Judge Cooley says: “Ho clause which the constitution contains has been more prolific of litigation, or given rise to more animated *215 and at times angry controversy. It is but twice alluded to in the papers of the Federalist, and though its great importance is assumed, it is evident that the writer had no conception of the prominence it was afterwards to hold in constitutional discussions, or of the very numerous cases to which it was to be applied in practice.” Cooley’s Con. Lim. 278. And Chief Justice Marshall in 1827, in the case of Ogden v. Saunders, 12 Wheat. R. 213, 335, responding to the question, what is a law impairing the obligation of contracts said, “ that in solving this question all the acumen which controversy can give to the human mind has been employed in scanning the whole sentence and every word in it.”
The numerous and diversified cases which have arisen under this clause of the constitution from time to time since its adoption have been the occasion of a great multitude of decisions by the supreme court of the United States and the supreme appellate tribunals of the several states.
In the light of these decisions, let us first see what has been the result of judicial inquiry as to the true meaning of the clause, “any law impairing the obligation of contracts,” and we can then determine whether the act of the legislature in question is such a law.
The clearest and most satisfactory construction of this clause is given by Chief Justice Marshall in 1819 in the opinion pronounced by him in Sturges v. Crowningshield, 4 Wheat. R. 122, 197.
“It would seem difficult,” said he, “to substitute words which are more intelligible or less liable to misconstruction than those which are to be explained. A contract is an agreement in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertaking; and this is, of course, *216 the obligation of his contract. In the case at bar, the defendant has given his promissory note to pay the plaintiff a sum of money on or before a certain day. The contract binds him to pay that sum on that day; and this is its obligation: Any law which releases a part of this obligation must, in the literal sense of the word, impair it—much more must a law impair it which makes it totally invalid and entirely discharges it.”
This construction'of the clause of the constitution and interpretation of its words have been followed by the courts ever since they were declared. As it is the law binding to the performance of the contract which constitutes the obligation, it has accordingly been held, and is now thoroughly settled, that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms: and this principle embraces alike those which affect its validity, construction, discharge and enforcement: that the ideas of validity and remedy are inseparable, and both are parts of the obligation guaranteed by the constitution against invasion; that while the remedy may be altered or changed by the state, yet it is with the qualification that the change shall not impair substantial rights: and that a law which lessens the duty under the contract on the one side, or abridges the right on the other, whether such law acts directly on the contract or indirectly through the remedy, impairs the obligation and is void. Bronson v. Kinzie, 1 How. U. S. R. 311; McCracken v. Hayward, 2 How. U. S. R. 608; Von Hoffman v. City of Quincy, 4 Wall. U. S. R. 535; White v. Hart, 13 Wall. U. S. R. 646; Gunn v. Barry, 15 Wall. U. S. R. 610; Walker v. Whitehead, 16 *217 Wall. U. S. R. 314; The Homestead Cases, 22 Gratt. 266; Bank of Old Dominion v. McVeigh, 20 Gratt. 547; Taylor v. Stearns, 18 Gratt. 244.
The rule, then, being that the laws in force at the •date of a contract enter into and form part of it, it is pertinent to inquire what the laws of Virginia were touching interest prior to the 10th day of April, 1865. Tor a reference to the early statutes on this subject see note to 1 Revised Code, 373. The subsequent statutes will be found in 1 Revised Code, ch. 102, ch. 128, §§ 79, 80; Code of 1860, ch. 141, §§ 4, 5, et seq., ch. 171, § 44; Code of 1873, ch. 137, ch. 173, § 14, ch. 167, §§ 43, 44.
It has always been lawful in Virginia for parties to contract for the payment of interest for the use or forbearance of money within the limits prescribed by statute; and in the absence of any express agreement for the payment of interest, in obligations for the payment of a certain sum of money on demand or ■on a given day, interest on the principal sum from the time it becomes payable is “a legal incident of the debt, and the right to it is founded on the presumed intention of the parties.” Chapman’s adm’rs v. Shepherd’s adm’r &c., 24 Gratt. 377.
Judge Staples, in delivering the opinion of the court in the case just cited, speaking of the defences which may be made to the recovery of interest on such obligations, as .we have mentioned, says: “It is true that the debtor may sometimes, under peculiar circumstances, avoid the payment of interest; but these are matters of defence, the burden of which is upon him in all cases. They are offered to show that the obligation to pay the interest has been discharged, and not that it did not originally exist. If no valid ground of ■defence is shown, the judgment is as certainly ren *218 dered for the interest as for the principal. In contracts of the character just mentioned, it is apparent, therefore, that interest is not given as damages at the discretion of the court or jury, but as an incident of the debt, which the court has no discretion to refuse.”
Wherever there is a contract, express or implied,, for the payment of legal interest, the obligation of the contract extends as well to the payment of the interest as it does to the payment of the principal sum, and neither the courts nor the juries ever had the arbitrary power to dispense with the performance of such contract, either in whole or in part.
Such being the law binding upon parties to contracts, and upon the courts and juries prior to the 10th day of April 1865, was it competent for the legislature-to change the law, and by giving it a retrospective action to deprive a party to a contract of the benefit to which he was entitled under it ? It will not be pretended that the legislature could by a statute, acting either directly upon the contract or indirectly through the remedy, release the principal sum or any part of it; and this because the law binds the debtor to the performance of his undertaking, which is the payment, of such principal sum; and for the same reason it would seem equally clear that the interest, when a part of the contract, and its payment as much a part of the undertaking of the debtor as the payment of the principal, cannot by legislative action, direct or-indirect, be remitted, released, or discharged.
If by the laws in force prior to the 10th day of April 1865, when the contracts were entered into, upon which the act of April 1873 is intended to operate, the courts and juries had, as some seem to suppose, absolute control over the subject of interest, and were-invested with full power in their discretion to allow or *219 disallow interest in all cases coming before them, wbat necessity was there for the act of April'2,1873? Why pass an amendatory act merely to confer upon them a power which they already had under the law without amendment ?
It would be unjust to the general assembly to impute such a purpose to them.
We must conclude, therefore, that the object of passing the act was, and if the acts were valid, its effect would be to confer upon the courts and juries a power over the subject of interest connected with past transactions not possessed by them under the law at the time such transactions took place—the power to “remit the interest upon the original debt found to be due, on any part thereof” from the 17th day of April 1861 to the 10th day of April 1865. The power to “’remit” is a power to release. It is conferred by the act without any limitation except the discretion of those upon whom it is conferred; a discretion not controlled by the settled principles and established rules of our jurisprudence, but to be exercised according to the pleasure of the courts and juries. In other words, it is an arbitrary power, the exercise of which can hardly be called a judicial inquiry.
The dates, 17th April 1861 and 10th April 1865, indicate the commencement and termination of the late war. The first was the day on which Virginia passed her ordinance of secession, and the last the day after that on which General Lee and the Confederate army surrendered at Appomattox Court-house. It is to be inferred therefore, that the remission of interest was authorized by reason of the existence of the war. But the mere existence of war does not abrogate debts, nor does it ordinarily stop the running of interest on debts, except, as before stated, between alien enemies. To *220 ma^e the war, therefore, the occasion, under all eircumstances, for the remission of interest on antecedent debts and contracts, would be giving it a controlling character as a fact in determining the rights Parties whi°h it did not have under the law at the time such contracts were entered into, and would thus supsi;ant;a]jy impair the obligation of such contracts. the case of McCall v. Turner, 1 Call 133, there are expressions in the opinions of several of the judges, which might indicate, that under the law as it then stood, they thought that the juries were invested with discretion to abate interest in all cases during war. But these expressions are mere dicta, and have no controlling influence as authority. The case decided was a controversy between parties who were considered as occupying the relation to each other of alien enemies during the revolutionary war, and the interest during the war was therefore properly abated.
Ambler’s ex’ors &c. v. Macon &c., 4 Call 605, decided in 1803, contains a dictum of Judge Pendleton, that “interest during the war ought not in justice and equity to have been allowed on debts due to domestic creditors no more than to foreign; but since it has ■ not been attended to either in practice or judicial decisions until so much business has been otherwise adjusted, it would be unjust at this late era to introduce it in a particular case, unless in one attended with peculiar circumstances.” Afterwards, in 1804, came on the case of Hawkins’ ex’or v. Minor &c., 5 Call 118, which was an appeal from a decree pronounced by Chancellor Wythe in the high court of chancery. One of the errors assigned on the appeal was, that the chancellor had disallowed interest for the period of the revolutionary war in a case where both creditor •and debtor resided during the war in Virginia; and *221 this court unanimously held that the disallowance by the chancellor of interest for said period was erroneous.
In the case of Crenshaw v. Siegfried, 24 Gratt. 272, one of the questions decided by this court was, that it was error in the court below to deduct interest during the war on a bond given before the war for the payment of a sum of money with interest from date. As the decree by which this deduction was made was pronounced prior to the passage of the act of the legislature the validity of which is drawn in question in the cases now before us, this court did not in that case pass upon the validity of said act. But Judge Mon-cure, in delivering the opinion of the court, said: “ Certainly the use of money is a valuable and legal consideration for a promise to pay legal interest thereon; and even an act of the legislature passed to annul or impair such a promise would be unconstitutional and void. Of course a decree declaring such a promise to be void, even in the absence of such an act, must therefore be erroneous.”
Our conclusion is, that the act of the general assembly, approved April 2,1873, entitled “ an act to amend and reenact section 14 of chapter 187 of the Code of 1860, in relation to interest,” so far as said act confers upon courts and juries, in the suits therein mentioned, a power to remit interest, as therein provided, on contracts entered into prior to the 10th day of April, 1865, which said courts and juries did not have under the laws in force at the time such contracts were entered into, is repugnant to the constitution of the United States, and to the constitution of this state, and is so far null and void. And we are further of opinion, that the mere existence of the late war between the United States and the Confederate States *222 ^oes n°t ulone furnish any legal ground for the abatement of interest on debts upon contracts during the time such war lasted. We do not mean to say, however, that there may not be special cases, attended circumstanees connected with or growing out of the war, which would furnish legal cause for abatement 0£ iQtere8£_ When such cases arise, they must be decided according to the law applicable to the peculiar facts and circumstances of each case. We can only lay down the general rule.
It follows from what has been said, that, in our opinion, the judgment of the circuit court of Fauquier county, in Roberts’ adm’r v. Cocke, &c., the first of the cases considered by us, based as it is solely on the act of the legislature aforesaid, is erroneous, and should be reversed and annulled.
Our reasoning, in the first case, leaves us but little to say in the second.
Blackstone, in his commentaries, divides contracts of debt into three classes: debts of record, debts by special and debts by simple contract. “ A debt of record is a sum of money, which appears to be due by the evidence of a court of record. Thus when any ■specific sum is adjudged to be due from the defendant to the plaintiff in an action or suit at law, this is a ■contract of the highest nature, being established by the sentence of a court of judicature.” .1 Chitty’s Black., book 2, side p. 455.
With us decrees for money are of the same nature •and dignity as judgments.
Judgments and decrees for money being contracts of the highest character, of course and for the reasons before stated, to abate any portion of the interest included in them, would necessarily impair their obligation. Moreover, by such judgments" and decrees the *223 rights of the parties, in whose behalf they were rendered, to the money ordered to be paid, whether principal or interest, have become vested, and cannot be ■divested, as provided by the act of the general assembly. Griffin’s ex’or v. Cunningham, 20 Gratt. 31.
We therefore conclude, that so much of the act ■aforesaid as empowers the courts to review judgments and decrees upon motion, and abate interest as in said ■act provided, is repugnant to the constitution of the United States and to the constitution of this state, and is therefore void; and it follows that the judgment of the circuit court of Fauquier county in the second case, Murphy v. Gaskins’ adm’r, based upon said act, is ■erroneous, and must be reversed and annulled.
Judgments reversed.