# Wytheville.

## HILL AND ALS. v. UMBERGER, ADM'R, AND ALS.

### July 26th, 1883.

1. EQUITABLE JURISDICTION AND RELIEF—*Laches and lapse of time.*—It is a familiar doctrine of courts of equity that nothing can call forth these courts into activity but conscience, good faith and reasonable diligence. Where these are wanting the court is passive. Staples, J., in *Harrison v. Gibson*, 23 Gratt. 223.

2. IDEM—*Idem—Loss of evidence—Death of parties.*—If the original transactions have become so obscured by time and loss of evidence, and the death of parties, that no correct account can be rendered, and that any conclusion at which the court may arrive must, at best, be conjectural, the court will not relieve the plaintiff.

3. IDEM—*Idem—Idem—Idem—Case at bar.*—In 1845, N. C. conveyed to McG., in trust for M., wife of P. H., slaves and other personalty—*c. q. t.* to possess and use same during her life, unless interference of trustee might be necessary to prevent disposal thereof by the husband—remainder to her children. M. died in 1855, her husband and children surviving. Later, in 1855, McG. qualified as guardian of the children, with S. as his surety. McG. sold two of the slaves for $2,200. Exactly when, or in what capacity he sold them, is unknown. Soon after M.'s death, her husband and children left this state, and in the state of A. he qualified as their guardian. In 1857 P. H., as such foreign guardian, obtained an *ex parte* order from the circuit court of W. county that McG., *trustee*, transfer to him all the said trust property, and take his receipt therefor. It is alleged that McG., in 1857, gave to P. H. his note for $2,063.16, for what was due from him as guardian; that T., as trustee, had paid to P. H. on the note $1,364; that the balance remained unpaid; that P. H. died in 1870, and that the note was burned accidentally in 1873; but that the note was given by McG. as guardian, or that it was unpaid and destroyed was not clearly proved. S. died about 1879, and his real estate was partitioned among his heirs, and U. qualified as his and as P. H.'s and as S.'s administrator, but had received no assets. It is unproved that McG. did not transfer to the foreign guardian the trust

property in obedience to the *ex parte* order, or that he ever received or held anything as such guardian. In 1882 A. C. H., and the other children of M., brought their bill in the said circuit court against the administrator and heirs of S., as surety on the guardian bond of McG., to subject the real estate of S. to the payment of the amount due them by McG. as such guardian. The defendants demurred and answered. At the hearing, the circuit court decided that the plaintiffs were not entitled to recover against defendants.

HELD:

> Under the circumstances of this case, wherein, by the lapse of time, laches of the parties, loss of evidence, and the death of the parties, an accurate investigation of the facts is impossible, and every presumption is against the claim of the plaintiffs, they are entitled to no relief in this cause.

Appeal from decree of the circuit court of Wythe county, rendered 28th December, 1882, in the cause of Alpheus C. Hill and the other heirs of Mary Hill, plaintiffs, against E. H. Umberger, administrator of Ephraim McGavock, deceased, and the administrator of, and David Sayers and the other heirs of H. D. Sayers, deceased, and others, defendants. The object of the suit was to recover, to the amount of the penalty of the bond of said McGavock, as guardian of the plaintiffs, on which said H. D. Sayers was surety, the sum due the plaintiffs from said guardian, by subjecting to sale for the payment thereof the real estate whereof said H. D. Sayers died seized in fee.

The decision of said court being adverse to the prayer of the plaintiffs, they obtained an appeal to this court. The opinion fully recites the facts.

*J. H. Gilmore*, and *Holbrook & Thomas*, for the appellants.

*William Terry*, and *William H. Bolling*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This is a contest between the wards of a foreign guardian, who was their father, and the heirs at law of the surety of a

domestic guardian, in which the former, the appellants here, and plaintiffs below, seek to recover from the latter money alleged to be due, and unaccounted for by said domestic guardian.

The circumstances are these: On the 23d day of April, 1845, Nancy Crockett, of Wythe county, conveyed several slaves and a small amount of other personal property to Ephraim McGavock, in trust, for the sole and separate use of her daughter Mary D. Hill, the wife of Paul C. Hill. Said deed provided that at the death of Mary D. Hill, said McGavock, trustee, should convey said slaves and the increase of the females thereof, to the children of said Mary D. Hill. Mary D. Hill died in 1855, leaving surviving her, her said husband, and the children who are the appellants here, together with two others named, who died in infancy. On the 8th day of October, 1855, and after the death of Mary D. Hill, said Ephraim McGavock, qualified as guardian of said children, all of whom were infants, and executed his bond as such in the usual form and in the penalty of $2,000, (while the order of court only required it in the penalty of $1,500) with H. D. Sayers as his surety.

Sometime subsequent to the death of his wife, Mary D., said Paul C. Hill removed with all his said children then living to the state of Arkansas, and having qualified as their guardian in that state, filed his petition as provided by statute, in the circuit court of Wythe county, for the purpose of having the property of his children and wards transferred from the custody of said McGavock into his own possession and control; and on the 16th day of October, 1857, an *ex parte* order was made by said court directing said McGavock, *trustee,* to "transfer and deliver to said Hill, *guardian,* said *trust* property in his hands, of whatsoever character, and to take from said Paul C. Hill his receipt therefor, specifying particularly what property—whether slaves, money, or other personal property so delivered to him, and to file the same as a voucher for further reference." Said McGavock, it is admitted on all hands, died several years prior to the institution of this suit; the papers in said proceeding for the transfer of said

property to said foreign guardian are lost, and no such receipt, as was directed to be taken and filed with the papers in said proceeding, can be found. Said *ex parte* order recites the production of satisfactory proof of the appointment and qualification of said foreign guardian in the state of Arkansas, and that he had given bond and security for the proper discharge of his duty as such guardian.

It appears that in 1857 Ephraim McGavock sold to S. S. Crockett two of the slaves held by him in trust as aforesaid for the sum of $2,200. Whether in making this sale said McGavock acted as either trustee or guardian, or in some other capacity, does not appear. There is no gleam of information on the subject furnished by the record, further than the fact that they were sold to said Crockett, who at the time gave a check for the money.

In the succeeding February, 1858, the said McGavock conveyed all his estate, real and personal, to Wm. Terry, trustee, by which conveyance he dedicated his real estate to the purpose of securing and indemnifying his brothers, Stephen and Cloyd McGavock, for liabilities they had incurred for him, and devoting his personal estate to the payment of his debts. Said McGavock thus became and remained insolvent until his death. After the order aforesaid transferring the said property from said McGavock to said foreign guardian—to-wit., on the 5th day of November, 1857, said McGavock executed, as appears from the record, his individual note or bond (it is not certain which) to said Paul C. Hill, as guardian for his said children, for the sum of $2,063.16; and said Hill put same for collection in the hands of R. C. Kent, an attorney-at-law at Wytheville, in whose hands it remained for some time, and was finally returned to said Hill by said attorney ; and it is now claimed that the same was destroyed by fire in the burning of a drug store in the state of Arkansas, where it had been stored for safe keeping after the death of said Hill, by a member of his family, one of the appellants here.

The fact that there ever was such a note or bond appears only by the deposition of said attorney, R. C. Kent, and he states dis-

tinctly that it was the individual bond of said McGavock. The fact that said writing, whatever its character, was destroyed by fire, has but little evidence to support it, and that is found only in the deposition of A. C. Hill, one of the appellants. He says his father "kept *his papers* in a bureau that he had at his boarding house, and after he died I took them to my room at the drug store of McAlmont & Gibson, where I was clerking. They were afterwards totally destroyed by fire," &c. * * * His attention is then particularly called to the bond or note as described in the bill in reference to date, amount, &c., and asked if he saw the bond among his father's papers, and in answer he says : "I can't say positively that I ever read the bond, but I have seen him (his father) have, and heard him reading papers bearing on this case. I know that it was my father's intention, a short time before his death, to come to Virginia and settle up this matter, and get the balance of this money. We were going into business together on the money."

William Terry, trustee, in said deed to secure said McGavock's creditors, as shown by the record, faithfully and promptly executed the trust reposed in him. He, from time to time, during the execution of his trust, paid to Paul C. Hill, guardian, on said note, $1,364, which payments were made directly to said Hill, though the note was held by said Kent for collection. This irregular way of proceeding dissatisfied Mr. Kent, and he settled with said Hill, and gave him up the note ; since which time, as truthfully stated by complainants in their bill, really nothing whatever is known as to what became of it.

Mary D. Hill died many years ago. Paul C. Hill died in 1870, some twelve years before the institution of this suit; H. D. Sayers in the year 1880, less than two years before this suit was brought; and said Ephraim McGavock died, as admitted in the argument of this cause, several years prior to the institution of this suit. So that the voice of every person who acted and

could speak to these transactions was hushed in death before any claim was asserted.

Such are the facts and circumstances of this case. Upon these, the appellants, the plaintiffs below, filed their bill, setting forth substantially the facts as stated above, and charged that said bond was executed by said McGavock as guardian; that, excepting the payments made by said Terry, trustee, said bond or note remains unpaid, or in any way accounted for by said McGavock. Said bill further shows that H. D. Sayers, who was the surety of said McGavock as guardian, died intestate, seized of real estate in Wythe county, which descended to and has been partitioned out among the heirs of said Sayers, who, with others, mere formal parties, were made parties defendant, and a decree asked for subjecting said land to the payment of the balance claimed to be due from said McGavock, not exceeding the penalty of said McGavock's bond as guardian. And said bill further charges, that said McGavock had possession and control as guardian of the negroes conveyed to him in trust, hired them out and received the hires from year to year, which, with the amount for which he sold said two slaves, made a large sum, and that for the amount thereof not accounted for otherwise, he executed said note to said foreign guardian, Paul C. Hill.

The heirs of H. D. Sayers, the appellees here, answered the said bill and relied upon the staleness of the demand, and the statute of limitations. They say, moreover, that in the very nature of things they could have little, if any knowledge of the actings and doings of Ephraim McGavock either as trustee or guardian, and therefore insist upon the strictest proof of everything necessary to establish the plaintiffs' demand against them.

The material or relevant evidence in this cause has already been stated. Upon the case thus made up the same came on and was heard by the circuit court of Wythe county on the

28th day of December, 1882, when a final decree was entered dismissing complainants' bill. From this decree an appeal was allowed by one of the judges of this court; upon which appeal the case is now here for determination. A great number of authorities *pro* and *con* have been referred to in the course of the able arguments with which the court has been favored in this case.

In the view taken, and the conclusion arrived at by the court many of these authorities need not be referred to. The peculiarities of this case are marked. The case itself turns upon few and very pointed facts. In fact, it may be truly said, that, in the eye of a court of equity, to state the case is to decide it, and with but little reference to adjudicated cases.

It is insisted for the appellants that Ephraim McGavock had possession and control as guardian of the slaves conveyed to him in trust, and that he hired them out for a number of years and received the hires, amounting to a large sum, which he failed to account for. This view is unsupported by any evidence, or even circumstance connected with the cause. In fact, to have taken possession and control of said slaves, except as provided for in said trust deed, would, in itself, have been a manifest breach of the trust reposed. Said trust deed, among other things, expressly provides "that the said McGavock, trustee as aforesaid, shall suffer and permit the said Mary D. Hill to hold the possession of the said slaves and other personal property, hereinbefore mentioned, and enjoy the benefit of the labor of said slaves, and receive the profits of their hire, unless the said Paul C. Hill shall attempt to sell or dispose of them," &c. And it is also provided in said deed that "if said Mary D. Hill should survive her husband, then the said trustee should convey said slaves, &c., to said Mary D. Hill for her life, and at her death to the children of said Mary D. Hill forever; but in the event of the death of said Mary D. Hill, in the lifetime of her said husband, with children living at her death, then, and in that event,

to such person or persons as the said Mary D. should designate in a writing in the nature of a last will and testament." So that in no event, except to prevent said Paul C. Hill from selling or disposing of said slaves, could said McGavock take them from the possession and control of said Mary D. Hill during her life. In fact there is in the record not the least evidence that said McGavock in any capacity received even one cent of the hires, or ever had the possession and control of said slaves.   On the contrary, we must presume that the said Mary Hill had and enjoyed the same during her life, and her husband and said children after her death, until they were freed by the result of the war.   Aside from the sale of said two slaves, there is no account, no evidence of the dealings of said McGavock with said trust property, either as trustee or guardian.   There is not the least evidence that said McGavock ever charged himself, or was chargeable as guardian, for the value of the negroes sold.   It was incumbent on the complainants to produce such evidence to support their claim.   *Smith et als.* v. *Gregory*, 26 Gratt. 263, and cases there cited; *Broadus* v. *Rosson, &c.*, 3 Leigh, 25.

The simple unsupported fact that said McGavock, trustee, after the order directing him to turn the trust property over to the foreign guardian, executed said note to said foreign guardian, is fastened upon as sufficient to support the claim of appellants— sufficient to show that the said McGavock did not obey the said *ex parte* order, but executed said bond or note in lieu thereof. We think the presumption just the contrary.   The papers, of record, in which said order was made are admitted to be lost, many years have elapsed, all the parties to these transactions have passed away, and now to presume that said order was disobeyed, when through this long period no word of complaint to that effect has ever been made, would be in violation of the well established rules, and contrary to every principle of fair dealing.

Again, if it be true, as contended by the appellants, that McGavock as guardian gave said bond to said foreign guardian for

and on account of balance due from him, that said foreign guardian received it as such, then the presumption is unavoidable that it was receipted for as such, and that the receipt has been lost with the papers in which it was filed. In such case is it not unconscionable, after the acquiescence of said foreign guardian during the long remainder of his life, and that of his children and wards for long years afterwards, to come now, unsupported by proof, and claim, as they do, upon bare assumption, that there was no discharge of the domestic guardian by these proceedings in court, and this long acquiescence out of court? The simple presentation of the case utterly refutes its claim to consideration. Every consideration of justice demands that, in such case, McGavock as guardian should stand, under the peculiar circumstances of this case, absolved and discharged as of the dates of said transaction, and that the foreign guardian then shouldered the liability, if any.

In this case there has been such long acquiescence, such laches and lapse of time as effectually to obscure and render it impossible safely to determine what was the true nature of the transaction in question. It is not necessary to discuss this proposition with reference to the statutory bar. We are not required to do so. The case turns upon its own peculiar circumstances. The appellants have stood by until the death of the last person who could throw any light upon the case. And now they come forward asserting a claim unsupported by proof, and call upon the courts to do what would be manifestly unjust and inequitable. And this is done after the lapse of some twenty-five years. It is, in the nature of things, impossible that any proper investigation can now be had. The persons who otherwise could speak, no longer live; the materials for investigation are lost; the grave has closed over all, save this stale claim. To enforce such a claim, the complainants are not entitled to the aid of a court of equity. This case rests upon the ground so clearly stated by Staples, judge, in *Harrison and als.* v. *Gibson and*

*als.*, 23 Gratt. 212, in which it is said, and is especially applicable here: "The complainants have slept upon their rights, if they ever had any. It is a familiar doctrine of courts of equity that nothing can call forth these courts into activity but conscience, good faith, and reasonable diligence." In the case under consideration, all these are wanting. No aid can be given to such a claim. For these reasons the decree of the court must be affirmed with costs to the appellees, which is ordered to be certified to the said circuit court of Wythe county.

DECREE AFFIRMED.