# Richmond.

## MERCHANTS BANK OF DANVILLE v. BALLOU.†

### FEBRUARY 8, 1899.

#### Absent, Riely* and Cardwell, JJ.

1. TRUSTEE—*Purchaser—Notice.*—The trustee in a deed to secure creditors is a purchaser for value, and notice to him is notice to the beneficiaries.

2. PRINCIPAL AND AGENT—*Trustee and Beneficiary—Acceptance—Notice— Substituted Trustee.*—In legal contemplation, the relation of principal and agent between the trustee named in a deed and the beneficiaries under the deed begins when the transaction is completed. The acceptance of the trustee is presumed until he declines to accept the trust, and should he decline, and a successor be appointed, he takes the shoes of the original trustee, and is subject to all the rights and responsibilities of the position as if originally appointed, and the trust in his hands is tainted with all the imperfections that attached to it in the hands of the original trustee.

3. TRUSTEE—*Notice—Ignorance of Deed—Declining Trust.*—The beneficiaries in a deed of trust are affected with notice to the trustee, although he did not know of the existence of the deed or of an intention to make it until it was recorded, and then immediately declined the trust.

4. CONSTITUTIONAL LAW—*Retrospective Laws—Presumption.*—A statute will not be construed to have a retroactive effect unless there is something on the face of the act putting it beyond doubt that such was the purpose of the Legislature.

5. CONSTITUTIONAL LAW—*Retrospective Laws—Vested Rights—Judgments.* The Legislature has no power to disturb vested rights of property by retroactive legislation. A judgment is such a vested right of property, and the Legislature cannot by retroactive legislation either destroy or diminish its value. It cannot alter its amount, nor dimin-

---

† Recently directed to be reported.

* Judge Riely had been counsel in the court below.

ish or destroy the effect theretofore given to it as a lien on real estate.

6. CONSTITUTIONAL LAW—*Defective Acknowledgments of Deeds—Curative Act—Prior Judgments.*—The act approved March 1, 1894 (Acts 1893-'4, page 580), to the extent that it attempts to validate deeds theretofore made for the benefit of corporations which had been acknowledged before a notary public or other officer who was a stockholder in such corporation, is unconstitutional and void so far as it affects the lien of judgments recovered and docketed against the grantors in such deeds prior to the approval of said act. Such acknowledgment is invalid.

Appeal from a decree of the Circuit Court of Halifax county, pronounced June 12, 1895, in a suit in chancery pending therein under the style of *Bank of South Boston* v. *Ballou and Others*, in which appellant was one of the defendants.

*Affirmed.*

The opinion states the case.

*Green & Miller*, for the appellant.

*William Leigh*, for appellees.

HARRISON, J., delivered the opinion of the court.

This is an appeal from an interlocutory decree, settling the principles of the cause, determining the right of priority between liens, and ordering the sale of certain real estate for the satisfaction of said liens. The appellee contends that the appellant has no standing in this court; first, because the appeal was not taken from the interlocutory decree complained of until after there had been a final decree; and, second, because appellant acquiesced in the decree complained of until it was too late to put the parties in *statu quo* if the same was reversed.

These questions it is unnecessary to consider for the reason that the decree complained of must be affirmed, and therefore whether they are decided for or against appellant, the result is the same.

The case presented by the appellant is as follows: On September 21, 1892, C. E. Ballou conveyed to R. W. Lawson, trustee, certain mill property to secure the Bank of South Boston $2,000. This deed was not recorded until April 14, 1893. In the meantime, on April 12, 1893, C. E. Ballou conveyed this same property to J. M. Carrington and H. J. Watkins, trustees, to secure numerous creditors, this last named deed being recorded on April 13, 1893. Soon thereafter Carrington and Watkins proceeded to execute the deed to them by advertising the property for sale, and on May 17, 1893, an injunction was awarded, stopping the sale, upon the alleged ground that the trustees, Carrington and Watkins, had notice of the deed for the benefit of the appellee, the Bank of South Boston, and that therefore neither they nor the beneficiaries under their deed, had acquired priority over appellee by its recordation. The rights of all the creditors were determined in this proceeding, the court holding that the beneficiaries under the deed to Carrington and Watkins took in subordination to the Lawson deed securing the Bank of South Boston.

The testimony of Carrington and Watkins shows that each of them had full and complete knowledge all the time of the Lawson deed, securing the Bank of South Boston, and that they knew of the existence of said deed at the time the deed from Ballou to them was executed, although they did not know of the intention of Ballou to execute the second deed, and did not know it was executed until it was recorded; that on the day it was recorded they were notified of the fact, and immediately asked if the Bank of South Boston had been protected.

That Carrington and Watkins had full knowledge of the Lawson deed at the time the deed to them was made and recorded is not denied; that a trustee or trustees in a deed to secure *bona fide* debts are purchasers for value, and that notice to him, or them, or either of them, is notice to the beneficiaries in said deed is not controverted.

The contention of appellant is that Carrington and Watkins, being ignorant of the execution and recordation of the deed to them at the time it was executed and recorded, were in no sense agents of the beneficiaries under that deed; that they knew nothing of the claims of the beneficiaries or of the intention of Ballou to make a deed to secure them until the deed had been fully executed and recorded; that they were only purchasers of the legal title, and if they had died, or had declined to accept the trust, notice to them would not have affected the beneficiaries; that their failure to act would have related back to the date of the record of the deed, and their appointment thereunder become void, while the deed would have remained a subsisting security in favor of the beneficiaries; that under such circumstances it would be inequitable to allow the rights of the beneficiaries to be affected by knowledge of the trustees, not acquired in their capacity as agents of the beneficiaries, but as agents of the South Boston Bank, it appearing that the trustees acquired their knowledge of the first deed while officers of the South Boston Bank.

In contemplation of law the relation of principal and agent between the trustee named in a deed and the beneficiaries under it begins when the transaction is completed. The trustee named may not act when informed of his appointment, but his acceptance is presumed until he declines, and when he refuses to act, a successor is appointed who takes his shoes, and is substituted to all the rights and responsibilities of the position as if he had been originally appointed, and the trust in his hands is tainted with all the imperfections that attach to it in the hands of the original trustee. It is not necessary to the validity of the deed that it should be executed by the trustee or the beneficiaries, or even that they, as a matter of fact, should know of its execution. The duties and powers of the trustee are not conferred by the creditor, but arise out of the instrument creating the trust. The rights of the creditor come to him

through the trustee, under the provisions of the deed, and so it has been repeatedly held by this court that the knowledge of the trustee of a prior existing deed is imputed to the creditor. Under the settled law of this State, Carrington and Watkins are, under the deed in question, purchasers for value, and under the facts proven they are purchasers with notice, for they were, confessedly, at the time of the execution and recordation of the deed to them, fully possessed of the fatal knowledge of the first deed, which made the second deed subordinate to the first.

It is not perceived how the position of Carrington and Watkins as purchasers for value with notice can be affected by the fact that they were not aware of the intention of Ballou to make the second deed, or of its recordation, when made; nor is it seen how their ignorance of that fact can take this case out of the established principles already adverted to.

Under Rule IX., the Bank of South Boston, one of the appellees, assigns as error, to its prejudice, the action of the court in giving the lien of certain judgments priority over its deed of trust.

This deed was acknowledged before the president of, and a stockholder in, the Bank of South Boston, the beneficiary thereunder, and was therefore not duly recorded as against the judgments in question. It is, however, contended that the defect in its acknowledgment and recordation was cured by an act of Assembly, approved March 1, 1894, which provides: " That no acknowledgment heretofore or hereafter taken to any deed or other writing executed by a company for the benefit of a company shall be held to be invalid by reason of said acknowledgment having been taken by a notary public or other officer who, at the time of taking said acknowledgment, was a stockholder or officer in the company which executed said deed or writing, and who was in no otherwise interested in the property conveyed or disposed of by said deed or writing; and the record of any such deed or writing heretofore made shall in all respects be deemed

valid, notwithstanding the fact that the notary or other officer was, at the time of such acknowledgment, a stockholder or officer in the company executing said deed or writing or for the benefit of which such deed or writing was executed: provided said notary or other officer was in no otherwise interested in the property conveyed or disposed of by said deed or writing when said acknowledgment was taken." Acts 1893-'4, page 580.

The contention is that this act was intended as a remedial, curative, and validating statute; that it was in the power of the Legislature to enact it, and to make it retroactive, so as to cure any defect in the recordation of the deed in question, and to give it the same force and effect that it would have had if properly recorded in the first instance.

A statute will not be construed so as to give it a retroactive operation unless there is something on the face of the enactment putting it beyond a doubt that such was the purpose of the Legislature. Whether or not the act relied on shows on its face a plain purpose on the part of the Legislature to make the imperfect acknowledgments mentioned therein valid from their date, even though it destroyed the rights of judgment creditors whose liens were acquired before the passage of the act, we will not stop here to consider, but will proceed to enquire as to the power of the Legislature to enact a law having the retroactive effect claimed for this.

It is unquestionably true that the Legislature has power to pass retroactive laws within certain limits, even though such laws may affect a certain class of vested rights. *Town of Danville* v. *Pace*, 25 Gratt. 1. The opinion of Judge Staples in this case is an elaborate and instructive discussion of the subject under consideration. The reasoning of the learned judge and the authorities cited, make it clear that it is not within the proper limits of the law-making power to disturb vested rights of property by retroactive legislation.

There can be no doubt that a judgment is such a vested right

of property that the Legislature cannot, by a retroactive law, either destroy or diminish its value. *Murphy* v. *Gaskins*, 28 Gratt. 207, 222; *Ratcliffe* v. *Anderson*, 31 Gratt. 105; *Gilman* v. *Tucker*, 13 L. R. A. 304 (N. Y.).

In the case last cited the power of the Legislature to pass retroactive legislation affecting a judgment is denied, and, in discussing the subject, it is said: "We must bear in mind that a judgment has been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly to reach or destroy. After adjudication, the fruits of the judgment become the rights of property. These rights become vested by the action of the court, and were thereby placed beyond the reach of legislative power to affect."

In *Murphy* v. *Gaskins, supra,* an act of the Legislature was construed, which empowered the court, in which any judgment or decree had been rendered prior to the passage of the act, on motion of the defendant to review such judgment or decree, and abate the same to the extent of the war interest included therein. The court held the act to be in violation of the State and Federal Constitution, and in the course of an able opinion, Judge Burks says: "Judgments and decrees for money being contracts of the highest character, of course, and for the reasons before stated, to abate any portion of the interest included in them would necessarily impair their obligation. Moreover, by such judgments and decrees the rights of the parties, in whose behalf they were rendered, to the money ordered to be paid, whether principal or interest, have become vested, and cannot be divested as provided by the act of the General Assembly."

It is, however, contended that the effect of the statute in question is not to impair the validity of the judgment, but only to modify the remedy for its enforcement. In other words, that though the judgment itself is a vested right that cannot be impaired or diminished by a retroactive law, yet the lien is not a vested right, but only a remedy provided for enforcing

the judgment, which can be taken away by such a law. This position is not tenable. The right to the lien upon the debtor's real estate is, in many cases, the sole inducement to the credit, which constitutes the basis of the judgment. Without the benefit of that lien, guaranteed by the law at the time the judgment is taken, the credit would not have been given.

In Cooley on Constitutional Limitations (5th ed.), p. 440, it is said that a right to be vested "must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another," and at page 445 it is said, "But a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference."

In the case of *Edwards* v. *Kearzey*, 96 U. S. 595, it was held: "The remedy subsisting in a State when and where a contract is made and is to be performed, is a part of the obligation; and any subsequent law of the State which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the Constitution of the United States, and therefore void." Mr. Justice Swayne, in delivering the opinion of the court, says: "It is also the settled doctrine of this court that the laws that subsist at the time and place of making a contract, enter into and form a part of the contract, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge, and enforcement."

Judge Christian, in delivering the opinion of the court in the Homestead cases, says: "Nothing can be more material to the obligation than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which are guaranteed by the Constitution against invasion. The laws which subsist at the time and place of making a contract, and where it is to be performed, enter into

and form a part of it, as if they were expressly referred to and incorporated in its terms. It is competent for the States to change the form of the remedy, or to modify it otherwise as they may see fit, provided that no substantial right secured by the contract is thereby impaired. But any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution." 22 Gratt. 288.

If, then, the lien of a judgment be as contended, a mere remedy for enforcing the judgment, the statute which gives that remedy forms a part of the contract for the lien, and any law which takes away such a remedy impairs the obligation of the contract. When these judgments were obtained the creditor, unquestionably, had a clear statutory right to enforce them against the real estate in controversy, and it would seem to be equally clear that such a right is a vested right that cannot be taken away by subsequent legislation. If the constitutional provision relied on can be successfully invoked, as we have seen it can be, to prevent a party from being deprived, by a retroactive law, of a few dollars of war interest included in his judgment, surely the same constitutional guarantee would avail to save the same party from having his whole judgment destroyed by a retroactive law taking away the lien which alone, as in the case at bar, gives that judgment its life and value. It has been well said:

> " You take my house when you do take the prop
> That doth sustain my house. You take my life
> When you do take the means whereby I live."

For these reasons the decree complained of must be affirmed.

KEITH, P., dissents from so much of the foregoing opinion as affirms the decree appealed from on the question raised by cross-appeal under Rule IX.

*Affirmed.*