# Richmond

CITY OF NORFOLK, ETC. v. PERCY S. STEPHENSON, ET ALS.

June 10, 1946.

Record No. 3050.

Present, All the Justices.

The opinion states the case.

*Jonathan W. Old, Jr., Donald W. Shriver* and *M. T. Bohannon*, for the appellant.

*Willcox, Cooke & Willcox*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

The city of Norfolk obtained this appeal from a decree declaring that the taxes reported delinquent from January 1, 1932, to date, on five lots lying in the city of Norfolk, constituted a cloud on complainant's title.

The conceded facts are that Thomas H. Willcox, Sr., by deed duly recorded in 1927, conveyed a one-half undivided interest in the lots to Percy S. Stephenson, A. Brooke Taylor, A. Gordon Stephenson and H. B. Goodridge. By the will of Thomas H. Willcox, Sr., duly probated in 1926, the other one-half interest was devised to Mary W. Carter, Thomas H. Willcox, Jr., Claiborne Willcox, C. Ambler Willcox, Edward R. Willcox and Charles S. Willcox. By deed recorded in 1935, Charles S. Willcox conveyed his interest to Virginia C. Willcox. By deed recorded in 1939, H. B. Goodridge conveyed his interest to Percy S. Stephenson, A. Brooke Taylor and A. Gordon Stephenson. By deed recorded in 1941, C. Ambler Willcox conveyed his interest to Mary W. Carter. By will probated in 1943 the interest of A. Gordon Stephenson passed to Elizabeth M. Stephenson.

For the years 1928 to 1939, inclusive, the lots were assessed in the name of "Percy S. Stephenson, et als." Taxes were paid on the lots so assessed for the years 1928 to 1931 and are delinquent and unpaid in the name of Percy S. Stephenson, et als., for the years 1932 to 1939, inclusive. For the years 1940 to 1943 the same lots were assessed for taxation in the name of "A. Gordon Stephenson, et als.," and are delinquent and unpaid. For the years 1944 to 1945, inclusive, the lots were assessed in the name of "Elizabeth M. Stephenson, et als.," and are delinquent and unpaid.

Appellant's first contention is that the facts are distinguishable from the facts in *Albemarle County* v. *Massey*, 183 Va. 310, 32 S. E. (2d) 228, and therefore the decision of that case is not controlling.

The facts in the *Massey Case* were that a tract of land owned by four parties was assessed in the name of one of the four joint owners, and after his death it was assessed in the name of decedent's estate. In the case under consideration, the property was assessed in the name of one of the joint owners "et als." Without enlarging upon the reasons assigned in the *Massey Case*, it is sufficient to say that, prior to the 1945 amendment to section 251 of the Tax Code, the addition of the words, "et als.," to the name of one of the joint owners was not a sufficiently accurate statement of the ownership of the land to constitute a valid assessment. 51 Am. Jur. 644; Anno. 50 L. R. A. (N. S.) 404.

Appellant's second contention is that, even if the assessment is invalid as to the unnamed co-tenants, it is valid as to the interest of the tenants named;—that is, that the assessment is valid as to the undivided interest of Percy S. Stephenson, A. Gordon Stephenson and Elizabeth M. Stephenson for the respective years in which the same was assessed in their names.

The provisions of the Tax Code require that every tract or lot shall be assessed as a whole. There is no provision authorizing an assessment on an undivided interest in any tract or lot. Section 252 of the Tax Code requires the Commissioner of Revenue to ascertain "all the real estate in

his county or city as the case may be and the person to whom the same is chargeable with taxes on that day." Sections 253 and 254 require the Commissioner of Revenue to assess each lot as a whole in the name of the person or persons owning the same. Section 273 requires the Commissioner of Revenue to list the lots in the name or names of the grantee or grantees appearing in every deed admitted to record.

One of the fundamental elements in a legal assessment of taxes is that the taxable property must be properly and accurately listed for taxation in books kept for the purpose and open to the public in such manner as to inform persons interested of the property to be taxed, its owner and the amount of the tax. Minor on Real Property, 2d Ed., sec. 1262.

To this may be added the right of the owner to go to the proper authorities, pay the amount of taxes assessed against him and obtain a release of the tax lien.

The authorities are divided on the question of whether the assessment of land, owned jointly by two or more, in the name of one is valid as to that one's interest in the land. The determination of the question depends entirely upon the language used in the different pertinent statutes. Anno. 50 L. R. A. (N. S.) 404; Anno. 80 A. L. R. 862; 51 Am. Jur. 644. If the statute is clear in other respects and permits the joint owner to pay his part of the tax and have his interest in the land exonerated, then the assessment is held to be valid. Appellant concedes in its reply brief that "There is no provision of law in Virginia whereby joint owners of real estate can be separately assessed with their respective undivided interests. Furthermore, there is no provision of law in Virginia authorizing any City Treasurer, in the case of real estate jointly owned, to accept a part of the taxes for any year from any joint owner and thereby relieve the interest of such joint owner from the lien of such taxes. The assessment and collection of taxes are controlled by law and not by agreement between the taxing authority and the taxpayer, * * * ."

■ The plight of a taxpayer, if this contention of the city were upheld, is exemplified by the action of some of the parties in this case. After the entry of the decree declaring that the entire tax for the period named was illegally assessed, Mary W. Carter, Thomas H. Willcox, Claiborne Willcox, Edward R. Willcox and Virginia Willcox filed a petition in the cause stating that they did not wish to take advantage of the decree and that they desired the lien of the taxes involved to remain effective as to their one-half undivided interest in the lots. The decree was so modified and the cause was dismissed as to the named parties. Notwithstanding this fact, the city treasurer would not accept payment of half of the amount of the taxes and release the one-half undivided interest in the property from the total tax lien claimed by the city. If the assessment created a lien upon an undivided interest, then the owner of the undivided interest should have a right, upon the payment of his proper share of the tax, to obtain a release. The city concedes that a joint owner has no such right under the present law. It would be unjust to the taxpayer to hold that there is a lien upon his undivided interest in the property and still deny him the right to have his interest in the property discharged by the payment of his *pro rata* share of the taxes.

The third and final contention of appellant is that the act of the General Assembly, adding subsection (a) to section 251 of the Tax Code,* is applicable.

---

*This act provides: "If real estate be owned by more than one person as tenants in common, joint tenants, or otherwise, the lien on such real estate for the payment of the taxes and levies annually assessed thereon, whether heretofore or hereafter, shall not be impaired, nor shall the assessment thereof be regarded as invalid, if such real estate was or is assessed in the name of one of such owners with the notation, 'and another', or 'and others', or 'and wife', or 'and husband', or the appropriate abbreviations of such words, or their legal equivalents, so as to indicate that the real estate was or is owned by more than one person.

"No assessment of any real estate, whether heretofore or hereafter made, shall be held to be invalid because of any error, omission or irrgularity by the commissioner of the revenue or other assessing officer in charging such real estate on the land book unless it be shown by the person or persons contesting any such assessment that such error, omission or irregularity has operated to the prejudice of his or their rights." Acts of 1945 (Ex. Sess.), chap. 76, p. 75.

The decree from which this appeal was allowed was entered on April 26, 1945, and the act in question became effective on August 15, 1945, 111 days after the final decree.

The precise question presented is whether the law in effect at the time of the rendition of the decree or the law in effect at the time of the decision of the appellate court applies.

There is a sharp conflict of the decisions as to the power of a Legislature to enact a curative statute which applies to a controversy in which a final judgment has been entered by a court of competent jurisdiction. The majority view seems to be that the Legislature has power to enact curative statutes applicable to such controversies, though the statute renders ineffective a final judgment of the court. 25 A. L. R. 1136. In the annotations, cases from 14 States and decisions of the Supreme Court of the United States are cited to support this view.

The minority view is that the Legislature has no power to enact a curative statute which applies to a controversy in which a final judgment has been rendered by a court of competent jurisdiction and which impairs or renders ineffective that judgment. The annotations in 25 A. L. R. 1137 cite cases from 5 States, including Virginia, to support this view. See 51 Am. Jur. 679. Perhaps the leading case on the subject in Virginia is *Martin* v. *South Salem Land Co.*, 94 Va. 28, 36, 26 S. E. 591. In that case, Judge Buchanan, speaking for the court, said:

"The legislature within certain limitations may alter and control remedies by which litigants assert their rights in the courts, but when the litigation has proceeded to judgment or decree upon the merits of the controversy, it has passed beyond its power.

"It has been uniformly held that the legislature has no power to grant a new trial or to direct a rehearing in a cause which has once been judicially settled, and that every such attempt is plainly an invasion of judicial power, and is therefore unconstitutional and void.

"Immediately upon the rendition of a judgment or decree for money, there arises a contract against the party adjudged to pay in favor of him for whose benefit it is awarded, which the legislature has no power to impair. 'Where,' says Blackstone, 'any specific sum is adjudged to be due from the defendant to the plaintiff in an action or suit at law, this is a contract of the highest nature, being established by the sentence of a court of jurisdiction.' I Chitty's Blackstone, book 2, marg. page 455; *Ratcliffe* v. *Anderson*, 31 Gratt. (72 Va.) 105, 31 Am. Rep. 716; *Griffin* v. *Cunningham*, 20 Gratt. (61 Va.) 31." *Metropolitan Life Ins. Co.* v. *Rutherford*, 2 Va. Dec. 707, 35 S. E. 719; *Anderson* v. *Hygeia Hotel Co.*, 92 Va. 687, 24 S. E. 269; *Wilson* v. *Hundley*, 96 Va. 96, 30 S. E. 492, 70 Am. St. Rep. 837; *Merchants' Bank* v. *Ballou*, 98 Va. 112, 32 S. E. 481, 44 L. R. A. 306, 81 Am. St. Rep. 715; *Burton* v. *Seifert & Co.*, 108 Va. 338, 61 S. E. 933.

This line of Virginia decisions has been modified to the extent that a final judgment or decree entered by a trial court is not now held to create a vested right until the time for filing a petition for an appeal or writ of error has passed.

The facts in *Kennedy Coal Corp.* v. *Buckhorn Coal Corp.*, 140 Va. 37, 124 S. E. 482, were as follows: A decree was entered by the trial court on the 13th day of December, 1921. At that time, under the provisions of Code of 1919, sec. 6337, appellant had 12 months in which to present his petition and record to the Supreme Court of Appeals for an appeal. On February 17, 1922, the General Assembly adopted an amendment to section 6337 reducing the time for presenting an appeal or writ of error to 6 months from the entry of the final judgment or decree by the trial court. On August 30, 1922, after the amendment had become effective, appellant presented its petition to the court for an appeal, which was refused on the ground that more than 6 months had elapsed since the date of the final decree. Thereafter the General Assembly, at a special session in 1923, passed an act (Acts of 1923, Ex. Sess., ch. 136) which in effect stayed the operation of the 1922 amendment as to all judgments and

decrees entered before the date on which the 6-months limitation became effective. The Kennedy Coal Company again filed a petition for an appeal, which was allowed. Appellees moved to dismiss the petition on the ground that the act of 1923, extending the time in ·which certain judgments· or appeals might be filed, was unconstitutional and void. The court, in effect, held that the provisions of the statute, increasing the time in which an appeal from the Circuit. Court to this court might be perfected, affect the remedy and not a vested right, and that the statute of limitations might be increased or diminished so long as it does not impair the obligation of a contract or a vested property right.

Judge Campbell, after reviewing many of the cases cited above, speaking for the court, at page 45, said:

"Now, what is· a vested right? Without reference to a dictionary definition, we would define it as a right, so fixed that it is not dependent on any future act, contingency or decision to make it more secure. Tested by this definition, we are of the opinion that the appellees had no such vested right as is contemplated by the decisions relied on. The right of appellees at the time of the rendition of the judgment of the court contained in the decree was not fixed in the sense that it was settled. It was an inchoate right, which would become vested upon the happening of one of two events, viz., an affirmance of the decree of the trial court by the Supreme Court of Appeals, or by the expiration of the period allowed at the time in which to take an appeal."

This decision was followed in *Farris* v. *Norfolk, etc., Ry.· Co.,* 141 Va. 622, 126 S. E. 673.

The facts in *Bain* v. *Boykin,* 180 Va. 259, 23 S. E. (2d) 127, were that F. B. and R. F. Bain, trading as L. F. Bain and Son, instituted an action on a bond. The trial court, following the majority opinion of this court in *Colbert* v. *Ashland Const. Co.,* 176 Va. 500, 11 S. E. (2d) 612, held that plaintiffs were not entitled to maintain the action because they had failed to comply with the provisions of Acts of 1936, p. 531 (Michie's Code 1936, sec. 4722 (1) ), requiring parties doing business under an assumed or fictitious .

name to file with the clerk of the Circuit Court of the county the true name or names of the parties conducting such business. While the *Bain Case* was pending in this court, the General Assembly amended the pertinent section of the Code (Acts of 1942, ch. 286), in effect overruling the decision in the *Colbert Case* and expressly providing that failure to comply with the provisions of the original act should not constitute a bar to the action if such certificate was filed at any time before final judgment.

Mr. Chief Justice Campbell, speaking for the court to the point in the *Bain Case* at page 263, said: "The primary question for solution is whether the law applicable at the time of the rendition of the judgment, or the law in effect at the time of the decision of the appellate court, applies. Upon this question there is a diversity of opinion.

\* \* \* \* \* \*

"It must be conceded that if, as contended, the defendant acquired a vested right by the rendition of a judgment in his favor in the trial court, then the law, as it was then, should be applied.

"Did the defendant acquire a vested right in the judgment rendered? Under our decisions he did not."

The reasoning in *Kennedy Coal Corp.* v. *Buckhorn Coal Corp., supra,* was approved and followed.

The principle enunciated in the last three cases cited is in line with the modern trend of the decisions and is supported by the most appealing reasons.

Chief Justice John Marshall, in *United States* v. *The Schooner Peggy,* 1 Cranch (5 U. S.) 103, 110, 2 L. Ed. 49, said: "It is, in the general, true, that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligations denied."

This has been consistently followed by the Supreme Court

of the United States. See *Dinsmore* v. *Southern Exp. Co.*, 183 U. S. 115, 22 S. Ct. 45, 46 L. Ed. 111; *Union Pac. R. Co.* v. *Snow*, 231 U. S. 204, 34 S. Ct. 104, 58 L. Ed. 184; *Abraham* v. *National Biscuit Co.*, 89 F. (2d) 266, 111 A. L. R. 1313, 1317; *Ziffrin* v. *United States*, 318 U. S. 73, 63 S. Ct. 465, 87 L. Ed. 621; 3 Am. Jur., sec. 1157, p. 668, and 1945 Supp.

The line of demarcation seems to be that private rights of parties, which have become vested by the judgment of the court, cannot be taken away by subsequent legislation but may be thereafter enforced by the court regardless of such legislation. This rule, however, does not apply to a suit brought for the enforcement of a public right. Although such right has been established by the judgment of a court, the force and effect of such judgment may be annulled by subsequent legislation but it cannot take away from the particular plaintiff special damages or his costs. *Pennsylvania* v. *Wheeling, etc., Bridge Co.*, 18 How. (59 U. S.) 421, 431, 15 L. Ed. 435. A judgment for the restitution of taxes collected under ostensible authority of a general statute will be reversed when, after the rendition of such judgment, a statute has been passed legalizing and ratifying such taxation. *Rafferty* v. *Smith, etc., Co.*, 257 U. S. 226, 232, 42 S. Ct. 71, 66 L. Ed. 208; *Hodges* v. *Snyder*, 261 U. S. 600, 43 S. Ct. 435, 67 L. Ed. 819.

The facts in *Robinson* v. *Robins Dry Dock, etc., Co.*, 238 N. Y. 271, 144 N. E. 579, 36 A. L. R. 1310, were that plaintiff was awarded compensation under the Workmen's Compensation Act of New York. Some time thereafter payment of the weekly compensation, was discontinued by order of the Industrial Commission pursuant to a decision of the Supreme Court of the United States declaring that the New York compensation law "did not apply to a person employed as this plaintiff's intestate was." Plaintiff thereafter instituted a tort action against the defendants, who plead the two-year statute of limitations. The trial court sustained the plea. Pending appeal, the New York legislature enacted a law

extending the statute of limitations applicable to such cases. The question before the appellate court was whether the old or the new period of limitation applied. Speaking to the point, the New York court said: "There remains only the question whether the extension of the time in which to bring the action can destroy a defense which was valid when interposed, and which was properly declared valid when the courts below passed upon the case, * * * .

"There is some conflict of decision in the various jurisdictions as to whether a case should be determined according to the law in effect when the judgment was rendered in the lower court, or according to the law in effect at the time the cause was disposed of on appeal, but both reason and the weight of authority seem to point to the view that, where a statute which is clearly intended to be retroactive and to apply to pending litigation is enacted after judgment and pending appeal, the appellate court may dispose of the case in accordance with the law as changed by the statute." *Danforth* v. *Groton Water Co.*, 178 Mass. 472, 59 N. E. 1033, 86 Am. St. Rep. 495; *Dunbar* v. *Boston, etc., R. Corp.*, 181 Mass. 383, 63 N. E. 916; *People* v. *Gilchrist*, 243 N. Y. 173, 153 N. E. 39; 5 C. J. S., Appeal and Error, sec. 1841, pp. 1310, 1311.

" * * * , while, as a general rule, the province of an appellate court is only to inquire whether a judgment when rendered was erroneous or not, if subsequently to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rules which govern, the law must be obeyed, unless it is unconstitutional." 3 Am. Jur., sec. 1157, p. 669.

The express terms of the act apply to assessments of the character under consideration "whether heretofore or hereafter made." It further provides that "no assessment of any real estate, whether heretofore or hereafter made," shall be held to be invalid because of any error, omission or irregularity in charging such real estate on the land books "unless it be shown by the person or persons contesting any such

assessment that such error, omission or irregularity has operated to the prejudice of his or their rights."

The purpose of the act is to prevent property owners from evading their fair share of the tax burden by reason of some error or omission of the assessing officers, but if this error or omission works to the prejudice of the landowner, then the curative provisions of the act shall not be invoked.

Appellees contend that the curative act is invalid *in toto* because the method of assessment validated is a violation of the due process clause of the Federal and Virginia constitutions. U. S. Const. Amend. 14; Const. Va. Art. 1, sec. 11.

The land book shows: (1) The name of a joint owner, "et als.," (2) an accurate description of the property, (3) the proper valuation of the land, (4) the proper valuation of the improvements, (5) the total valuation, and (6) the amount of tax levied. Each and every one of the joint owners knew that he or she only owned an undivided interest in the lots. The assessment gave each person interested sufficient notice to contest the valuation if such contest was considered necessary.

"Moreover, a State in the exercise of its taxing power may direct that the property subject to that power shall be assessed without any reference whatever to the name of the owner by any such description or method as is legally adequate to convey either actual or constructive notice to the owner." 51 Am. Jur., p. 636, sec. 675.

There is no clause in the Constitution which limits the power of the General Assembly to authorize the assessment of property without any reference to the name of the owner provided the land is properly described. It necessarily follows that the State can provide for such assessment in the name of one of the joint owners with the words, "et als.," added.

Since the act became effective after the decree of the chancellor was entered, appellees have had no opportunity to prove that the assessment as made operated to their prejudice. For this reason, the case will be remanded with

directions to the chancellor to permit appellees to amend their pleadings, and to appear and be heard on this issue if they desire to raise it.

The decree is reversed and the case remanded with directions as stated.

*Reversed and remanded.*