PRESENT: All the Justices

KEN McKEITHEN, SUCCESSOR
TRUSTEE OF THE CRAIG E. CALDWELL
TRUST U/A DATED DECEMBER 28, 2006

OPINION BY
v. Record No. 210389                    JUSTICE D. ARTHUR KELSEY
                                         OCTOBER 19, 2023
CITY OF RICHMOND

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

The City of Richmond obtained a judicial sale of a parcel of property subject to a

statutory lien for delinquent taxes. Although the sale proceeds wholly satisfied the City's tax

lien, the circuit court held that Code § 58.1-3967 required it to award a portion of the surplus sale

proceeds to the City rather than an unsatisfied junior lienor. We agree that the statute's text

required this result but hold that as applied to this case, the statute operated in a manner that

violated Article I, Section 11 of the Constitution of Virginia.

I.

At the time of his death in 2006, Charles H. Davis Sr. owned a parcel of property in

Richmond. Payment of local property taxes on the parcel ceased after his death. The City filed

an action in 2017 seeking a judicial sale of the property to satisfy its statutory lien for 10 years of

unpaid taxes. Under Code § 58.1-3340, the City's tax lien took priority over all prior liens on the

property. The City alleged that two prior liens had been recorded. The earliest lien, a deed of

trust recorded in 2001 and securing a $14,000 debt, had been filed by Dixie L. Jones, who

subsequently died, but the lien remained subject to the claim of her "unknown heirs." J.A. at 71.

The later lien, a judgment lien recorded in 2012, existed in favor of the Craig E. Caldwell Trust

("Caldwell Trust") and secured an unpaid award that, including principal and interest, exceeded

$100,000.

The City obtained from the court an order of publication providing notice to the subordinate lienors and other interested parties. The court also entered an order appointing a guardian ad litem to represent the interests of unknown parties and those who had been served by order of publication. After proper notice had been given, the court ordered the appointment of a special commissioner to sell the property at a public auction. The highest bidder bought the property at auction for $50,050.

The circuit court confirmed the sale on April 30, 2018, ordering that the property be conveyed free and clear of all liens to the highest bidder. The confirmation order directed that the City's lien for delinquent taxes, along with its costs and legal fees, be fully paid by the purchase proceeds. Having statutory priority over all other liens, the City received $19,563.06 for delinquent taxes, penalties, and interest and $9,315.84 for the City's costs and legal fees. The circuit court directed that the remaining $21,171.10 of the surplus proceeds be deposited in the court's registry in the event that the unknown Jones beneficiaries and the Caldwell Trust made timely claims — $14,000 to be held for the unknown Jones beneficiaries as the superior lienor and the remaining $7,171.10 to be held for the Caldwell Trust.

In June 2019, Ken McKeithen, as the successor trustee of the Caldwell Trust, sought payment of $7,171.10 from the court's registry, which the court ordered. In June 2020, the Caldwell Trust filed a motion seeking payment of the remaining, unclaimed portion of the $21,171.10 in surplus proceeds held in the court's registry. The Caldwell Trust pointed out that under Code § 58.1-3967, the unknown Jones beneficiaries had forfeited their claim to the surplus proceeds by not asserting it within two years from the entry of the court's 2018 confirmation order. Because the unknown Jones beneficiaries had forfeited their interest by failing to file a timely claim and because the City had been made whole, the Caldwell Trust argued that the

2

remaining portion of the $21,171.10 surplus held in the court's registry should be applied to the Caldwell Trust's outstanding secured debt that exceeded $100,000.

The City opposed the Caldwell Trust's request, arguing that the $14,000 unclaimed portion of the surplus proceeds escheats to the City under Code § 58.1-3967 even though the City's tax lien had been fully satisfied. The City acknowledged that "[i]t may seem counterintuitive to take a position that inferior lienholders have no rights to surplus funds which superior lienholders leave unclaimed," J.A. at 126, but argued that it makes good sense for two reasons. First, the statute's reference to an "unknown beneficiary" contemplates the "possibility of a party perfecting a lien against a prior owner *after* a tax sale case is confirmed." *Id.* (emphasis added). Second, "any other interpretation would create uncertainty with the distribution of surplus funds." *Id.* The uncertainty would exist, the City suggested, because the inferior lienor would not know to claim the superior lienor's interest until after the expiration of the two-year deadline.

The circuit court agreed with the City, concluding that "the statutory scheme directs payment of the surplus to the City of Richmond," *id.* at 128, the fully satisfied lienor, not to the Caldwell Trust, a partially satisfied lienor. The Caldwell Trust filed a motion for reconsideration, asserting that the circuit court's interpretation of Code § 58.1-3967, as applied to this case, violated "Section 11 of Article I of the Bill of Rights to the Virginia Constitution and the Fifth Amendment to the United States Constitution." J.A. at 130. The court disagreed, reasoning that the Caldwell Trust "does not have a property interest" in the surplus proceeds forfeited by the unknown Jones beneficiaries, and thus, the City should retain the unclaimed proceeds even though its lien had been fully satisfied. *Id.* at 144.[1]

_____

[1] The court voiced no dispute, however, with the timeliness and procedural propriety of the Caldwell Trust's motion for reconsideration. The parties' agreed-upon written statement of

3

II.

On appeal, the Caldwell Trust argues that the circuit court's interpretation of Code § 58.1-3967, as applied to this case, violates both the United States Constitution and the Constitution of Virginia by taking its property interest in the surplus proceeds and transferring it to the City. We first address whether the circuit court's interpretation of Code § 58.1-3967 is correct, and if so, whether the application of the statute unconstitutionally violates the Caldwell Trust's property rights.

A.

In Virginia, a locality has a statutory lien upon real estate for taxes assessed against that real estate. *See* Code § 58.1-3340. Several statutes, including Code § 58.1-3967, specify the methods for seizing property and selling it to pay delinquent taxes. *See generally* Jeffrey A. Scharf, *Collection of Delinquent Taxes*, *in* Handbook of Virginia Local Government Law § 10-5.03, at 10-25 to -29 (April Wimberley ed., 2023 ed.). As is often the case, the property may be subject to other competing interests and recorded liens. While giving the tax lien superordinate status, the statute requires the court (through a commissioner in chancery, if necessary) to prioritize and satisfy other claims against the property to ensure an unencumbered sale to the purchaser. *See* Code §§ 58.1-3967, -3969. The underlying premise seems to be that, "[i]n judicial sales the court in some sense is regarded as the vendor, making sale by a commissioner as its agent, and the contract is treated as a contract substantially between the purchaser on one

---

facts, approved by the circuit court, *see* Rule 5:11(e), notes that the Caldwell Trust had "complied with all statutory procedures required of it pursuant to Virginia's creditors rights laws and Virginia Code § 58.1-3967 to establish, protect, enforce and preserve its rights as the holder of an unsatisfied and valid lien 'chargeable' against the Property and the proceeds of sale of the Property." J.A. at 150.

side and the court as vendor on the other." *Long v. Weller's Ex'r*, 70 Va. (29 Gratt.) 347, 355 (1877).

This statutory scheme is not a legislative novelty. The opening sentence of the statute states that the process "shall be by bill in equity," Code § 58.1-3967, making "this type of action . . . an equitable one," *Emmanuel Worship Ctr. v. City of Petersburg*, 300 Va. 393, 399 (2022). Though technically an equitable action, the statute adds that "[s]uch proceedings shall be held in accordance with the requirements, statutory or arising at common law, relative to effecting the sale of real estate by a creditor's bill in equity." Code § 58.1-3967. Statutes addressing common-law or equitable doctrines often use words "obviously transplanted from another legal source" and thereby bring "the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)). Most often invoked when interpreting statutes addressing common-law topics, this canon of construction applies with no less force to "statutes codifying equitable proceedings." *Day v. MCC Acquisition, LC*, 299 Va. 199, 206 (2020). The text of Code § 58.1-3967, therefore, must be understood within the context of settled common-law principles of real property and the remedial equitable powers of chancery courts.

In chancery practice, a "creditor's bill" sought a judicial sale of real estate "for the purpose of subjecting [the debtor's] real estate to the payment of the [creditors'] liens thereon." *McClanahan's Adm'r v. Norfolk & W. Ry.*, 122 Va. 705, 732-33, 739-40 (1918). In effect, the judicial sale converts the creditor's lien on real property into a dollar-for-dollar equitable claim on the sale proceeds of the encumbered property. *See generally* William Minor Lile, An Outline of the Equity Pleading and Practice § 440, at 222-23 & n.1 (2d ed. 1922); 4 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1415, at 1065-67 (Spencer W. Symons ed., 5th ed. 1941). The "lien" as such disappears from the recorded title so that a bona fide purchaser can

5

take the property free and clear of encumbrances. *See* Doug Rendleman, Enforcements of Judgments and Liens in Virginia § 6.2[A], at 6-5 (3d ed. 2014).

In a typical judicial sale, competing lienors are free to challenge competitors by asserting that the competing lien is invalid or that the underlying debt has been paid in full or in part. The court may, through order of reference, appoint a commissioner in chancery to resolve questions as to lien hierarchy and amount. *See, e.g.*, Code § 58.1-3969. *See generally* Leon P. Ferrance & Jane Ostdiek, *Judgments*, *in* Enforcements of Liens and Judgments in Virginia § 6.808, at 369-70 (Tyler P. Brown ed., 8th ed. 2019); Lile, *supra*, §§ 452, 460, at 230-31, 235; Rendleman, *supra*, § 6.3[A]-[B], at 6-12 to -15. This inter se litigation, however, does not take place when a known competing lienor with proper notice has made no appearance in the proceeding. An untimely claimant forfeits any claim, whether valid or invalid.

The problem that sometimes arises, as it has in this case, is when a recorded lien exists but a diligent search does not disclose the identity of the lienholder or successors in interest, and no timely claim for the lien has been filed. Employing a 98-word sentence with 5 clauses, Code § 58.1-3967 answers the problem as follows:

> If no claim for payment of the indebtedness secured by any lien chargeable thereon is made by an unknown beneficiary of such lien, or if no claim for such surplus is made by such former owner, his heirs or assigns, within two years after the date of confirmation of such sale, then such amount secured by the lien of the unknown beneficiary, surplus, or both, as applicable, shall be paid by the clerk of the court in which such suit was instituted to the county, city, or town that received proceeds from the sale of the real estate.

As we read this provision, it treats an unknown lien beneficiary in the same manner as a "former owner" or "his heirs or assigns" of the property. Code § 58.1-3967. In both instances, the statute provides that any surplus proceeds (after the payment of all timely filed priority claimants) shall be held by the court for "two years after the date of confirmation of such sale."

6

*Id.* If a claim by a "former owner" or "his heirs or assigns" is made during that two-year period, then the claimant recovers his equitable interest in the surplus proceeds after the payment of all other enforceable liens. *Id.* If a claim is made during the two-year period by a previously unknown beneficiary of a lien, then that claimant recovers his equitable interest in preference to the former owner but still subject to the hierarchy of other enforceable liens. If no claims are filed during the extended two-year period by former owners, heirs or assigns, and unknown lien beneficiaries, Code § 58.1-3967 extinguishes these unclaimed interests as abandoned property and directs the court to pay the unclaimed proceeds to the condemning party.

The statute is easy to understand when referring to a former owner's claim over the surplus proceeds. It is not as easy to understand when talking about competing lienors. In this case, a lienor (the Caldwell Trust) filed a valid claim to the surplus proceeds. The two-year extended period for unknown beneficiaries of another lien (the Jones deed of trust) came and went without any claim being asserted. Thus, the City argues, the "unclaimed" proceeds referred to in the statute that escheat to the City are specifically those unclaimed by the unknown beneficiary. In contrast, the Caldwell Trust implicitly argues that the escheated proceeds are only those "unclaimed" by the unknown beneficiary *or by any other lien claimant* with a property interest in the surplus sale proceeds.

The answer gets even more complicated as we hypothesize the existence of unknown heirs or assigns of a deceased former owner who make a claim to surplus proceeds during the two-year period. If an unknown lienor fails to make any claim at all, what would happen to the surplus proceeds set aside for this lienor at the end of the two-year period? The City argues that these proceeds would be treated as abandoned, and thus they would escheat to the City and not be paid to the former owner's heirs or assigns. Under the Caldwell Trust's understanding of the

7

statute, the former owner's heirs or assigns would have an absolute right to the surplus proceeds, and the City, a fully compensated lienor, would have no right to the proceeds whatsoever.

We believe the Caldwell Trust has the better argument from an equitable point of view. But the City has the better argument from a textualist perspective. As we recently reaffirmed, "[w]e can only administer the law as it is written." *Prease v. Clarke*, 302 Va. ___, ___, 888 S.E.2d 758, 763, (2023) (quoting *Coalter v. Bargamin*, 99 Va. 65, 71 (1901)). Code § 58.1-3967 refers to the "unclaimed" property that escheats to the City as "such amount secured by the lien of the unknown beneficiary." That "such amount," Code § 58.1-3967, corresponds exactly to the proceeds placed in the court's registry for potential claims during the extended two-year term for unknown lien claimants. The statute then directs the "clerk of court" to pay "such amount" to the City even though, as all parties agree, the City tax lien has been fully satisfied and the Caldwell Trust's lien has not. For these reasons, we hold that the text of Code § 58.1-3967 escheated the $14,000 proceeds unclaimed by the unknown Jones beneficiaries to the City and forbids these surplus proceeds from being applied to the undercompensated judgment lien asserted by the Caldwell Trust.

B.

Having concluded that the City's interpretation of the statutory text is correct, we now address the Caldwell Trust's argument that the statute — as applied to this particular case — unconstitutionally infringes upon property rights protected by Article I, Section 11 of the Constitution of Virginia.[2] We agree that it does.

---

[2] The statute's text, regrettably for us, sidelines the constitutional-avoidance canon. Our regret comes from the admonition made by Chief Justice John Marshall that

> [n]o questions can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of a legislative act. If they become indispensably necessary to the case,

1.

Under Article I, Section 11 of the Constitution of Virginia, the "threshold question" is

whether the alleged taking involves a "property interest" recognized by Virginia law. *Johnson v.*

*City of Suffolk*, 299 Va. 364, 370 (2020). The constitutional right to "private property" protected

from government seizure envelops the bundle of preexisting, traditional rights recognized by

statutory, common-law, and equitable principles. If that were not the case, the government could

"by ipse dixit" redefine property as non-property as a pretext for confiscation. *See Phillips v.*

*Washington Legal Found.*, 524 U.S. 156, 167 (1998) (citation omitted). If allowed to do so,

government could simply "'sidestep the Takings Clause by disavowing traditional property

interests' in assets it wishes to appropriate." *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 638 (2023)

(citation omitted). "This is the very kind of thing," the United States Supreme Court has said,

"that the Taking Clause of the Fifth Amendment was meant to prevent." *Webb's Fabulous*

*Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980). We have the same understanding of the

Takings Clause of Article I, Section 11 of the Constitution of Virginia.

---

the court must meet and decide them; but if the case may be
determined on other points, a just respect for the legislature
requires, that the obligation of its laws should not be unnecessarily
and wantonly assailed.

*Ex parte Randolph*, 20 F. Cas. 242, 254 (C.C.D. Va. 1833) (No. 11,588). In Virginia, we
understand this canon to be an aspect of the "doctrine of judicial restraint" that "dictates that we
decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va.
194, 196 (2015) (per curiam) (citation omitted). We agree with the prevailing view, however,
that "[u]nder the constitutional-avoidance canon, when statutory language is susceptible of
multiple interpretations, a court may shun an interpretation that raises serious constitutional
doubts and instead may adopt an alternative that avoids those problems. But a court relying on
that canon still must *interpret* the statute, not rewrite it." *Jennings v. Rodriguez*, 138 S. Ct. 830,
836 (2018) (emphasis in original). In this case, the City makes a convincing argument that Code
§ 58.1-3967 says what it says and that we should not take an editor's pen to it. Addressing the
constitutionality of the statute, as applied to the unique facts of this case, is thus unavoidable.

9

2.

The modern judgment lien is statutory with no specific antecedents in English common law. *See generally* 2 A.C. Freeman, A Treatise on the Law of Judgments § 916, at 1927-29 (Edward W. Tuttle ed., 5th ed. 1925); 5 Herbert Thorndike Tiffany, The Law of Real Property § 1581, at 704-05 (Basil Jones ed., 3d ed. 1939). Its origins can be traced back to the 13th century "writ of eligit," *Jones v. Hall*, 177 Va. 658, 661-64 (1941), which was later supplemented in Virginia chancery courts with "an entirely new remedy, the creditor's bill, to provide the judgment creditor with a way to collect from the judgment debtor's equitable assets," Rendleman, *supra*, § 6.1, at 6-3; *see also* Martin P. Burks, Common Law and Statutory Pleading and Practice § 341, at 653-54 (T. Munford Boyd ed., 4th ed. 1952). Most courts recognize that "[t]he judgment lien is not an estate in the debtor's land but only an encumbrance giving the creditor the right to have the judgment debt paid out of the debtor's property by forcing its sale." 5 Michael Allan Wolf, Powell on Real Property § 38.02[2], at 38-6 (2022); *see* Rendelman, *supra*, § 5.1, at 5-2 to -3. We are in full agreement with this view.

In Virginia, Code § 8.01-458 provides that a properly docketed judgment "shall be a lien on all the real estate" of the judgment debtor. "Jurisdiction to enforce the lien of a judgment shall be in equity." Code § 8.01-462. We have described a judgment lien as "a right given the judgment lien creditor to have his claim satisfied by the seizure of the land of his judgment debtor" and "a right to levy on any such lands for the purpose of satisfying the judgment." *Jones*, 177 Va. at 664. Code § 58.1-3967 specifically refers to the real-property liens being "chargeable" on the "surplus" sale proceeds generated by a judicial sale. The statute codifies the "settled law" that "a judgment is a lien on the equity of redemption." *Neff's Adm'r v. Newman*, 150 Va. 203, 209 (1928). A judgment lien thus constitutes a "vested property right" to recover the secured debt from the proceeds of a judicial sale of real property, *McClanahan's Adm'r*, 122

10

Va. at 744, and "[t]here can be no doubt that a judgment is such a vested right of property that the legislature cannot, by a retroactive law, either destroy or diminish its value," *Merchants' Bank of Danville v. Ballou*, 98 Va. 112, 117-18 (1899).[3]

The City offers little resistance to this reasoning, at least as far as it goes. Instead, the City objects primarily to the extent of the Caldwell Trust's claimed property interest in the surplus sale proceeds. The City measures the Caldwell Trust's interest in the surplus proceeds *after* deducting the amount of the abandoned Jones lien. Had it not been abandoned, the City points out, the $14,000 Jones lien would have taken priority over the later-in-time lien asserted by the Caldwell Trust. Under the City's logic, the Caldwell Trust never had any property interest in any surplus proceeds that *could have been claimed* by the beneficiaries of the superior Jones lien. The fact that none of these beneficiaries made a timely claim, the City contends, simply does not matter.

We view the City's argument as circular. The proper focus should be on the extent of the Caldwell Trust's property interest in the surplus proceeds, if any, prior to the alleged taking — not after it. Under equitable principles, the very notion of superior and inferior liens presupposes that the former take precedence over the latter with respect to the same proceeds. *See Buchanan v. Clark*, 51 Va. (10 Gratt.) 164, 177 (1853); *Haleys v. Williams*, 28 Va. (1 Leigh) 140, 140 (1829); Rendleman, *supra*, § 5.5[A], at 5-21 & n. 2. The inferior lien does not begin where the superior lien ends. They instead overlap with the superior lien superseding the inferior lien. Both classes of lienors have an underlying property interest in the surplus proceeds of a judicial

---

[3] It is an intangible property right but a vested one nonetheless, and no less protected than vested choses in action that qualify as property interests protected by constitutional principles. *See City of Norfolk v. Stephenson*, 185 Va. 305, 313 (1946); *Merchants' Bank of Danville*, 98 Va. at 117-18; *Ratcliffe v. Anderson*, 72 Va. (31 Gratt.) 105, 110 (1878); *Roberts' Adm'r v. Cocke*, 69 Va. (28 Gratt.) 207, 222-23 (1877).

sale of real property. Rules governing lien priority, not the doctrinal boundaries of property interests, determine the final score. The inferior lienor, it could be said, loses the competition not because he failed to show up for the game but because the superior lienor defeated him on the playing field.

In this case, the circuit court was called upon to exercise its "equity" jurisdiction. *See* Code § 8.01-462. Equitable principles deem each competing lienor to have an intangible property interest in the surplus proceeds of the sale because "in equity the judgment is a lien upon the whole of the debtor's equitable estate." *Hale v. Horne*, 62 Va. (21 Gratt.) 112, 122-23 (1871) (citation omitted). Competing lienors

> are entitled to satisfaction according to the priorities of their incumbrances in point of time: and in equity the judgment is a lien on the whole of the debtor's equitable estate, and the whole fund and not a moiety, must be applied to the satisfaction of the prior judgment before the subsequent incumbrance can be let in.

*Michaux's Adm'r v. Brown*, 51 Va. (10 Gratt.) 612, 619 (1854).

Which lienor has priority over the other presents an entirely different issue. Statutory and common-law principles determine the priority of competing liens and the mandatory queue for payment. *See* Code § 8.01-459; Rendleman, *supra*, § 5.5, at 5-20 to -37. To be sure, the very thought that one lien takes "priority" over another presupposes that both are competing over the same res. Based upon this understanding, we hold that the Caldwell Trust, a judgment creditor, had an intangible property interest under Virginia law in the surplus proceeds of the sale to the extent of its underlying judgment.

3.

The next question is whether Code § 58.1-3967, as applied to the unique facts of this case, authorizes an unconstitutional taking of private property in violation of Article I, Section 11

12

of the Constitution of Virginia.[4] The nature of an as-applied challenge assumes the possibility of

different circumstances in which the statute could be constitutional. And that is easy to

hypothesize here. Had there been only one lien on the property (the untimely Jones lien, for

example), the statute would be invulnerable to a constitutional takings challenge if it escheated

the forfeited surplus proceeds to the City in a manner consistent with procedural due process.

*See Tyler*, 598 U.S. at 643-44 (citing *Nelson v. City of New York*, 352 U.S. 103, 109-10 (1956)).

The case before us, however, is quite different. It involves a fully satisfied tax lien, an

abandoned and thus forfeited superior lien, and a valid but not fully satisfied inferior lien.

Article I, Section 11 of the Constitution of Virginia states in pertinent part that the ancient

right of private property is a "fundamental" right in the Commonwealth. *See also* Code § 1-

219.1(A). No enacted "law" can authorize the government to damage or take private property

"except for public use." Va. Const. art I, § 11.[5] And even when such damage or taking has a

---

[4] In this case, the Caldwell Trust makes an as-applied, constitutional claim rather than a facial challenge. The distinction is crucial. The Caldwell Trust does not argue that Code § 58.1-3967 cannot be constitutionally applied in any and all cases — only that it cannot be done in this one, specific case. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610-12 (1973) (discussing the general rule that the Court will limit itself to the constitutional question as applied to the facts before it and examine facial challenges only under "limited exception(s)"); *Toghill v. Commonwealth*, 289 Va. 220, 228 (2015) (explaining the distinction between a facial and an as-applied challenge). *See generally* 1 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law: Substance and Procedure § 2.13(g), at 405-08 (5th ed. 2012) (discussing the self-restraint doctrines underlying constitutional adjudication). In an as-applied challenge, the "precise facts" of the case play a crucial role in the legal analysis and holding. *See United States v. Raines*, 362 U.S. 17, 20-22 (1960); *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).

[5] "Read literally, the operative clause of Article I, Section 11 of the Constitution of Virginia states only that the General Assembly 'shall pass no law' that takes or damages private property except for public use, thus implying that the constitutional prohibition acts solely as a limitation upon the legislature." *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 476 (2017) (citation omitted). "For good reason, we have never accepted such a hyper-literal reading of this provision. From ancient times, ad hoc seizures of property without direct legislative approval were understood to violate the requirement of just compensation no less than outright legislative confiscations." *Id.*

"public use" justification, the government must pay "just compensation to the owner thereof."

*Id.*

In this case, the City does not dispute that it laid claim to the abandoned Jones proceeds solely by operation of the escheat mandated by Code § 58.1-3967 and does not assert any specific public-use justification. The City had been fully compensated for its tax lien and had no other basis in law or equity to receive the unclaimed surplus proceeds. Nor is there any disagreement about the status of the unclaimed $14,000 portion of the surplus sales proceeds. As the circuit court correctly stated, the statute "extinguished" the $14,000 Jones lien because it "was not claimed" within the mandatory two-year period. J.A. at 144. In the circuit court and on appeal, the City has fully agreed with this view of the unclaimed proceeds. *Id.* at 125-27; Oral Argument Audio at 22:25 to 23:30.

The circuit court, however, adopted a but-for and even-so logic to the statutory escheat. "*But for the statute*," the court held, the Jones lien "would still be valid." J.A. at 144 (emphasis added).[6] Even so, the court reasoned, because of the statute — specifically its forfeiture provision applicable to untimely claims by unknown beneficiaries — the Jones lien was extinguished and treated as if it never existed. *See id*. This logic failed to recognize that the Caldwell Trust's lien protected an intangible "property" interest within the meaning of Article I, Section 11 of the Constitution of Virginia. That interest would have been subordinated to any superior liens, such as the Jones lien, but no superior liens were asserted and thus all were extinguished by Code § 58.1-3967. The fully compensated City has no property interest

---

[6] The circuit court took no evidence on the factual validity or legal enforceability of the Jones lien. The court had no information suggesting that the underlying Jones debt had already been paid in full, in part, or not at all. It does not affect our analysis, however, whether the circuit court intended its validity remark to address the subject hypothetically or to make a factual finding that the unclaimed lien (had it been asserted) was uncontestable.

14

whatsoever in the unclaimed surplus.  As applied to this particular scenario, Code § 58.1-3967 unconstitutionally authorized the City to take these proceeds from the Caldwell Trust and to keep them for itself.[7]

4.

We end our analysis with a clarifying coda.  During oral argument on appeal, we asked the parties about the possibility that the City, if allowed to keep the forfeited $14,000 portion of the surplus proceeds, might at some time in the future locate the unknown Jones beneficiaries and distribute all, some, or none of the money to them.  The questions were prompted by the last sentence of Code § 58.1-3967, which states that a municipality, after receiving unclaimed, escheated proceeds, "may deem [it] appropriate" in the indeterminate future to "pay over such amount" to claimants who later appear and claim the money as their own.[8]

In response to our questioning, the Caldwell Trust asserted at oral argument that the last sentence of Code § 58.1-3967 has no impact on the takings analysis because the City should have never taken the unclaimed proceeds to begin with and what the City might do later with the proceeds (in its sole discretion at some later unspecified date) cannot retroactively render an unlawful taking to be lawful.  We agree with this view.  As applied to the unique facts of this

---

[7] The Caldwell Trust also argues that applying the statute to this case violates the Fifth Amendment of the United States Constitution.  We need not decide this issue because the statute violates the Constitution of Virginia.  That does not mean, of course, that our reasoning does not consider the prevailing interpretation by the United States Supreme Court of the Fifth Amendment's Takings Clause.  To the contrary, we find those interpretations in many respects wholly consistent with our understanding of Article I, Section 11 of the Constitution of Virginia.  We thus view the federal precedents as persuasive, but not binding, authority. *See Howell v. McAuliffe*, 292 Va. 320, 331, 335 (2016).  Even when principles of federal and state constitutional law share common ground, there is "no good reason not to look first to Virginia's Constitution for the safeguards of the fundamental rights of Virginians." *Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 588 (1981) (citation omitted).

[8] Neither the City nor the Caldwell Trust mentioned this provision in any of their briefs or oral arguments in the circuit court or in any of their briefs on appeal.

15

case,[9] the statute authorized the City "by ipse dixit," *Phillips*, 524 U.S. at 167 (citation omitted), to treat the Caldwell Trust's property interest in the surplus proceeds as non-property, seize the unclaimed Jones proceeds for itself, and thereby "'sidestep the Takings Clause by disavowing traditional property interests' in assets it wishes to appropriate," *Tyler*, 598 U.S. at 638 (citation omitted). This conclusion is not weakened by the hypothesis that the City, under no compulsion of law, might show mercy to unidentified claimants who, at some unspecified future date, may seek to reclaim their once-surrendered funds.

### III.

In sum, we hold that the escheat provision of Code § 58.1-3967, as applied to the factual circumstances of this case, violates Article I, Section 11 of the Constitution of Virginia. The circuit court erred in failing to so rule. We remand this case for proceedings consistent with this opinion.

*Reversed and remanded.*

---

[9] The provision appears to contemplate surplus proceeds that have not been claimed by any party until after the judicial-sale proceeding has come to an end and after the statutory forfeiture of the proceeds to the government entity bringing suit has been completed. *See, e.g.*, *Nelson*, 352 U.S. at 109-10.

16